Danny FANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 1047–94.

Court of Criminal Appeals of Texas, En Banc.

Oct. 16, 1996.

Stanley G. Schneider, W. Troy McKinney, Tom Moran, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, States Atty., Austin, for the state.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

WHITE, Judge.

Harris County authorities arrested appellant on February 2, 1993, and charged him with possession of a controlled substance with intent to deliver. Pursuant to TEX. CODE CRIM.PROC.ANN. art. 59 the State then initiated forfeiture proceedings against the cash, pistols, and cellular telephone which were seized from appellant when he was arrested. The Original Notice of Seizure and Intended Forfeiture set out that it was "brought under and by virtue of Chapter 59 of the Texas Code of Criminal Procedure." The State alleged that the United States currency and property seized from appellant at the time of his arrest was "contraband as defined by Article 59.01 of the Code of Criminal Procedure, . . ., and is thereby subject to forfeiture."

Appellant and the State entered into an agreed judgment on June 21, 1993. This agreement stipulated that $1,500.00 in currency and the two pistols were "not subject to forfeiture." Pursuant to this agreement, appellant forfeited $3,823.00 in United States currency and a Motorola cellular telephone. The State and appellant agreed that this money and property were thereby "forfeited to the City of Baytown, trustee for the Harris County Organized Crime Narcotics Task Force in compliance with Tex.R.Crim.P. Chp. 59."

On September 23, 1993, appellant filed a pre-trial application for a writ of habeas corpus based upon Cause Number 656,133, wherein the State indicted appellant for possession with intent to deliver a controlled substance. In his application, appellant claimed the State was barred from prosecuting him for the possession with intent to deliver offense under the double jeopardy provisions of the Fifth Amendment, U.S.CONST. The trial court denied the application but stayed further proceedings pending appeal of the denial.

The Fourteenth Court of Appeals reversed the trial court's decision and rendered a judgment granting appellant's application for writ of habeas corpus. *Fant v. State*, 881 S.W.2d 830 (Tex.App.—Houston [14 Dist.] 1994).

In its only ground for review before this Court, the State argues the Fourteenth Court of Appeals "erred in holding that, in Texas, a narcotics defendant's right against double jeopardy is necessarily violated when he is prosecuted for a criminal narcotics offense after his property has been subjected to an in rem forfeiture in a separate, but related, civil forfeiture proceeding." We will reverse.

## I. THE DECISION OF THE TRIAL COURT

At the hearing on appellant's application for writ of habeas corpus, appellant introduced into evidence the State's Original Notice of Seizure and Intended Forfeiture and the Agreed Final Judgment in that action.[1] The first document showed the State originally seized from appellant $5,323.00 in U.S. currency, one .22 caliber pistol, one .45 caliber pistol, and one Motorola cellular phone. The second document proved the parties

---

1. In a post-submission brief submitted to this Court, the State contends appellant has never shown that he has been punished twice for the same offense with which he is now charged. The State failed to argue this position in the trial court. The State also failed to present this argument on direct appeal to the Court of Appeals.

When presenting his application for writ of habeas corpus, counsel for appellant argued that the forfeiture of his property barred prosecution in the instant case because that property was "taken as a result of the arrest in this case." Counsel for appellant also asked the trial court to take judicial notice of the indictment in the instant case. During the hearing before the trial court, the State never contested or disputed trial counsel's statement that the forfeited property was taken from appellant pursuant to the arrest which resulted in appellant's indictment in the instant case.

agreed that $1,500.00 in U.S. currency and the two pistols were not subject to forfeiture, with the currency being returned to appellant and the pistols being returned to his attorney of record. The second document also proved that the remaining $3,823.00 in currency and the Motorola cellular telephone were "forfeited to the City of Baytown, Trustee for the Harris County Organized Crime Narcotics Task Force in compliance with Tex.R.Crim.P. (sic) Chp. 59."

Appellant argued before the trial court that forfeitures can constitute punishment within the meaning of the Eighth Amendment, and that punishment for purposes of the Eighth Amendment also applies to the Fifth Amendment. Appellant cited *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), contending that the forfeiture of his money and cellular phone caused a jeopardy bar to criminal prosecution in his case. The State responded that *Halper* and *Austin* stood for the proposition that the forfeiture was unreasonable and excessive and involved "property not contraband," and that there were no Texas cases which reached the same conclusion as *Halper* and *Austin*. The State also argued that jeopardy restrictions against punishing someone twice did not apply to civil forfeitures. The State argued that civil forfeitures did not involve the same elements as a criminal indictment. The trial court denied the application for writ of habeas corpus.

## II. THE DECISION OF THE COURT OF APPEALS

On direct appeal, appellant claimed that he was entitled to relief under the jeopardy

provisions of both the Fifth Amendment, U.S. CONST., and Art. I, § 14, TEX. CONST. The Court of Appeals analyzed this claim solely on Federal grounds because it believed that "State and Federal double jeopardy provisions are identical." *Fant v. State*, 881 S.W.2d at 832.[2] Therefore, we will only determine whether the instant forfeiture violated appellant's Fifth Amendment right to be protected from receiving a multiple punishment for the same offense.

The Court of Appeals analyzed whether the forfeiture of appellant's money and cellular phone was punitive or was only remedial in nature. They relied on three opinions of the Supreme Court to conduct their analysis. The Court of Appeals first discussed *U.S. v. Halper*, 490 U.S. at 440–441, 109 S.Ct. at 1897–1898 (1989). The Court of Appeals viewed *Halper* to stand for the ruling that a civil, as well as a criminal sanction, can constitute punishment when the sanction serves the goal of punishment. The majority below relied on the following language from *Halper*,

"[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper*, at 448, 109 S.Ct. at 1902.

*Fant v. State*, 881 S.W.2d at 832.[3]

The Court of Appeals then discussed the decision in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), wherein the Supreme Court determined whether the Excessive Fines Clause of the Eighth Amendment[4] applied to forfeitures

2. Neither party has contested this conclusion nor argued to this Court that Art. I, § 9 extends more protection against double jeopardy than the Fifth Amendment.

3. The Court of Appeals noted that "in *Halper*, the defendant filed false Medicare claims totalling $585. Under the terms of the Federal False Claims Act, he was fined over $130,000." *Fant v. State*, 881 S.W.2d at 832 n. 2. In *U.S. v. Halper*, after the defendant had been convicted under the criminal false-claims statute, 18 U.S.C. § 287, resulting in a sentence of two years imprisonment and a $5,000 fine; the Government

brought an action against defendant under the civil False Claims Act, 31 U.S.C. §§ 3729–3731, seeking a statutory penalty of $130,000. *Halper*, 490 U.S. at 437–438, 109 S.Ct. at 1895–1896. This action under the civil False Claims Act was the subject of the appeal in *U.S. v. Halper*.

Unlike *Halper*, the instant case involves the forfeiture of property which was seized as contraband and conceded to be such by appellant.

4. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.CONST. Amend. VIII.

under the forfeiture provisions of the federal controlled substances act.[5] In *Austin,* the United States government sought an in rem forfeiture of the defendant's mobile home and auto body shop after the defendant pled guilty in a South Dakota state court to possession of cocaine with intent to distribute, pursuant to 21 U.S.C. §§ 881(a)(4) and (7).[6] The Court of Appeals viewed the Supreme Court's decision as critical of the forfeiture provisions because the value of the property seized under them can vary so dramatically, that any relationship between the government's actual costs and the amount of the forfeiture is coincidental. The Court of Appeals believed the *Austin* Court concluded that forfeiture under the statute did not serve only a remedial purpose, but instead constituted "payment to a sovereign as punishment for the same offense." *Fant v. State,* 881 S.W.2d at 832. The Court of Appeals pointed out the Supreme Court decided in *Austin* that forfeiture under the provisions of the federal controlled substances act was "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Fant v. State, id.*

Lastly, the Court of Appeals discussed the decision in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth Ranch,* the Supreme Court decided whether the state's tax, imposed on the possession and storage of dangerous drugs, had punitive

characteristics which subjected it to the Double Jeopardy Clause. U.S. CONST. Amend. V.[7] The Court of Appeals relied on the Supreme Court's explanation that "criminal fines, civil penalties, civil forfeitures, and taxes all share certain features," citing *Austin v. United States, 509 U.S. at 621–623,* 113 S.Ct. at 2812. "They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior. All of these sanctions are subject to constitutional restraints." *Kurth Ranch,* 511 U.S., at ——, 114 S.Ct. at 1945. The Court of Appeals pointed out that the Supreme Court decided Montana's drug tax was "fairly characterized as punishment, and thus could not be imposed in a second proceeding following the first punishment for the criminal offense." *Fant v. State,* 881 S.W.2d at 833. However, the Court of Appeals chose not to rely on *Kurth Ranch* in making its decision in appellant's case.

The Court of Appeals chose to follow the decision in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, to determine "whether appellant has already been punished by the forfeiture of his property under TEX.CODE CRIM.PROC.ANN. art. 59.02." *Fant v. State,* 881 S.W.2d at 833. In the course of making this decision, the Court of Appeals sought to resolve whether Chapter 59 could be characterized as punitive or remedial. *Fant v. State,* 881 S.W.2d at 834.

5. See 21 U.S.C. §§ 881(a)(4) & (7). These statutes provide for the forfeiture of:
    "(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution]"
    "(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment...."

6. In *Austin,* the defendant met an individual at the defendant's auto body shop and agreed to sell the individual some cocaine. The defendant went back to his mobile home and returned to the shop with two grams of cocaine which he

sold to the individual. *Austin v. U.S.,* 509 U.S. at 603–606, 113 S.Ct. at 2803.

7. In *Kurth Ranch,* six members of the extended Kurth family were charged with conspiracy to possess drugs with the intent to sell for cultivating and selling marijuana. All six defendants entered into plea agreements on these charges. Next, the county attorney filed a civil forfeiture action against the Kurths seeking to recover cash and farm equipment used in the marijuana operation. The respondents settled the forfeiture action with an agreement to forfeit $18,016.63 and various items of equipment. Lastly, after the criminal proceedings and civil forfeiture proceedings were concluded, the Department of Revenue of Montana attempted to collect almost $900,000 in taxes on marijuana plants, hash tar and hash oil, interest, and penalties. This last action was the cause before the Court in *Kurth Ranch. Kurth Ranch,* 511 U.S., at ——––——, 114 S.Ct. at 1942–1943.

First, the Court of Appeals adopted the conclusion of the Supreme Court in *Austin* that "forfeiture has been historically understood as punishment." *Fant v. State, id.* Second, the Court of Appeals reviewed the Supreme Court's "focus" on the innocent owner defense in the federal forfeiture statutes, 21. U.S.C. §§ 881(a)(4)(C) & (a)(7), and their finding that the inclusion of an innocent owner defense revealed a congressional intent to punish only those involved in drug trafficking. *Fant v. State,* 881 S.W.2d at 833. Because the Texas forfeiture statute also included an innocent owner defense, TEX. CODE CRIM.PROC.ANN. art. 59.02(c)(2), the Court of Appeals decided the Texas Legislature intended to impose the penalty of forfeiture on those involved in criminal activity, "which makes the statute look more like punishment, not less." *Fant v. State,* 881 S.W.2d at 834.

The Court of Appeals also found the inclusion of the forfeiture statute in the Code of Criminal Procedure lent further support to their conclusion that the purpose of the forfeiture statute was to punish drug traffickers. *Fant v. State,* 881 S.W.2d at 834.

After conceding the Texas forfeiture statute has remedial goals, as codified in Art. 59.06(c), (h), the Court of Appeals stated the forfeiture statute must be characterized as "punitive, based on the factors delineated in *Austin.*" *Fant, id.* The Court of Appeals then concluded appellant had already been punished for his criminal conduct by the forfeiture of his cash and cellular telephone, and further punishment of appellant for his criminal conduct was barred "by the Double Jeopardy Clause of the United States Constitution." *Fant v. State,* 881 S.W.2d at 834.

The Court of Appeals carefully pointed out it was not holding the Texas forfeiture statute unconstitutional. It explained that if the State wished to both prosecute an individual criminally and pursue forfeiture proceedings against that individual, "it must do so in the same proceeding." The Court of Appeals sustained appellant's first point of error and

granted his application for writ of habeas corpus. *Fant v. State,* 881 S.W.2d at 834.

## III. *UNITED STATES V. URSERY*

Recently, the Supreme Court handed down its decision in *United States v. Ursery,*[8] — U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549(1996), in which it decided that civil forfeitures, generally, do not constitute "punishment" for purposes of the Double Jeopardy Clause of the Fifth Amendment. The Court of Appeals did not have the benefit of this decision when it decided the instant case. In light of *U.S. v. Ursery,* the Court of Appeals' reliance upon *Austin v. United States* was misplaced.

The Supreme Court began *Ursery* with a review of decisions governing "in rem civil forfeiture actions and criminal prosecutions based on the same underlying events." *U.S. v. Ursery,* —— U.S., at ——, 116 S.Ct., at 2140.

The Court pointed out "in a long line of cases, this Court has considered the application of the Double Jeopardy Clause to civil forfeitures, consistently concluding that the Clause does not apply to such actions because they do not impose punishment." *Ursery, ibid.* The Court reviewed its decisions in three prior cases.

In *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931), the Court unanimously held the Double Jeopardy Clause was inapplicable to civil forfeiture actions:

> [This] forfeiture proceeding ... is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted, and punished. The forfeiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply.

---

**8.** The companion case to *Ursery* was *United States v. $405,089.23 in United States Currency et al.* Both cases were decided together on certiorari by the Court in a single opinion, hereafter referred to as *Ursery.*

*Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2140. The Court concluded, "for the *Various Items* Court to have held that the forfeiture was prohibited by the prior criminal proceeding would have been directly contrary to the common-law rule, and would have called into question the constitutionality of forfeiture statutes thought constitutional for over a century." *Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2141; and cases cited therein.

Next, the Court set out its holding in *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972)(per curiam), wherein it reaffirmed the rule of *Various Items.* The Court held "the forfeitures were not criminal punishments because they did not impose a second in personam penalty for the criminal defendant's wrongdoing." *Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2141.

Lastly, the Court relied upon *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). In reviewing the forfeiture statute in *89 Firearms,* to determine whether it was punitive or remedial, the Court first looked to the intent of Congress. The Court concluded the statute was intended to be remedial based on several findings.

First, noting that the forfeiture proceeding was in rem, we found it significant that 'actions in rem have traditionally been viewed as civil proceedings, with jurisdiction dependent upon the seizure of a physical object.' ... Second, we found that the forfeiture provision, because it reached both weapons used in violation of federal law and those 'intended to be used' in such a manner, reached a broader range of conduct than its criminal analogue. Third, we concluded that the civil forfeiture 'furthered broad remedial aims' including both 'discouraging unregulated commerce in firearms' and 'removing from circulation firearms that have been used or intended for use outside regulated channels of commerce'.

*Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2142.

The second stage of the Court's inquiry in *89 Firearms* was to determine whether the statutory scheme was so punitive either in purpose or effect "as to negate Congress'

intention to establish a civil remedial mechanism." The Court found the petitioner in *"89 Firearms* failed to establish that Congress had provided a sanction so punitive that it transformed what was intended as a civil remedy into a criminal penalty." *U.S. v. Ursery,* ⸺ U. S. at ⸺, 116 S.Ct. at 2142.

From its review of these cases, the *Ursery* Court concluded that "in rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive in personam civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." *U.S. v. Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2142.

Next, the Supreme Court reviewed the decisions in *Halper, Kurth Ranch,* and *Austin.* The Court held "none of these decisions purported to overrule the well-established teaching" of *Various Items, Emerald Cut Stones,* and *89 Firearms.*

*Halper* involved not a civil forfeiture, but a civil penalty.... The narrow focus of Halper followed from the distinction that we have drawn historically between civil forfeiture and civil penalties. Since at least *Various Items,* we have distinguished civil penalties, such as fines, from civil forfeiture proceedings that are in rem.

*Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2144.

The *Ursery* Court explained that in an in rem forfeiture proceeding "it is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned." *Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2145.

The Court concluded "the case-by-case balancing test set forth in *Halper,* in which a Court must compare the harm suffered by the Government against the size of penalty imposed is inapplicable to civil forfeiture." *Ursery,* ⸺ U.S. at ⸺, 116 S.Ct. at 2145. The Court pointed out they recognized this in *Kurth Ranch. Ursery,* ibid.

Lastly, the Court emphasized that *"Austin* was decided solely under the Excessive Fines Clause to the Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment." *Ursery,* ⸺ U.S. at ⸺, 116 S.Ct.

at 2146. Because forfeitures under 21 U.S.C. §§ 881(a)(4) and (a)(7) are subject to review for excessiveness under the Eighth Amendment after "*Austin,* this does not mean, however, that those forfeitures are so punitive as to constitute punishment for the purposes of double jeopardy." Therefore, the Court declined "to impart the analysis of *Austin* into our Double Jeopardy jurisprudence." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2147.

The Court concluded "nothing in *Halper, Kurth Ranch,* or *Austin,* purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the double jeopardy clause." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2147.

### IV. THE TEXAS FORFEITURE STATUTE

■ In light of *Ursery,* we begin our analysis of the State's argument with an examination of the provisions of the TEX.CODE CRIM.PROC.ANN. Chp. 59 to determine whether the Texas forfeiture statute is remedial or punitive. The first step in our analysis under *Ursery* is to determine whether the Legislature intended for the proceedings under Art. 59 to be civil or criminal. Secondly, we must determine whether the proceedings are so punitive in fact as to persuade us that forfeiture proceedings may not legitimately be viewed as civil in nature in spite of the Legislature's intent. *Ursery,* 59 Cr.L. at 2196–2197.

■ Chapter 59 sets out the definitions, guidelines, and procedures the State for the "forfeiture of contraband." The statute defines contraband as "property of any nature" that has been used in the commission of any first or second degree felony under the PENAL CODE, any felony set down in Chapters 29, 30, 31, or 32 of the PENAL CODE, or any felony under The Securities Act, art. 59.01(2)(A); or property that has been used or was intended to be used in the commission of any felony under The Texas Controlled Substances Act, among other statutes or proceeds gained from the commission of a felony set out in subsections (A) and (B) or from a crime of violence; or acquired with proceeds gained from the commission of a felony listed in subsections (A) and (B) or a crime of

violence. Art. 59.01(2)(B), (C), and (D). Therefore, property is contraband when it is used as an instrument, or is intended to be used as an instrument, in the commission of a specified crime, as well as property which is gained as proceeds, or acquired with proceeds gained, from the commission of a specified crime.

Art. 59.02(a) commands that property which is contraband, as defined above, is subject to seizure and forfeiture. Art. 59.04 sets out the rules for notice in a forfeiture proceeding. Art. 59.04(b) states a forfeiture proceeding commences when notice of the seizure and intended forfeiture takes place. Service on the owner of the property and any interest holder in the property must be performed in "the same manner as provided for the service of process by citation in civil cases." Any owner or interest holder in the property shall be named as a party and "served with citation as provided by the Texas Rules of Civil Procedure." Art. 59.04(i).

Art. 59.05 sets out the rules governing forfeiture hearings. In a forfeiture hearing, all of the parties "must comply with the rules of pleading required in civil suits." Art. 59.05(a). Moreover, "all cases ... shall proceed to trial in the same manner as in other civil cases. The state has the burden of proving by a preponderance of the evidence that property is subject to forfeiture." Art. 59.05(b).

Lastly, a "final conviction for an underlying offense is not a requirement for forfeiture under this chapter." In fact, if the underlying criminal offense results in a dismissal or acquittal, evidence of an acquittal merely "raises a presumption that the property or interest that is the subject of the hearing is nonforfeitable. This presumption can be rebutted by evidence that the owner or interest holder knew or should have known that the property was contraband." Art. 59.05(d).

These statutory provisions shed light on whether the Legislature intended that forfeiture under our statute be remedial or punitive. As was the case in *Ursery* and *89 Firearms,* there is little doubt the Legislature intended Art. 59 forfeitures to be reme-

dial. The Legislature's intent is shown by the procedural mechanisms which it established to govern forfeiture proceedings. From the statute it appears the Legislature intended forfeitures to be civil proceedings in rem. The Texas forfeiture proceedings are impersonal actions targeted against the property itself. As in *89 Firearms* and *Ursery,* the jurisdiction of a forfeiture proceeding, as with other proceedings in rem, is dependent upon seizure of the physical object. Art. 59.03; and *Ursery,* —— U.S. at ——, 116 S.Ct. at 2147.

The proceedings described above are to be governed at all times by the rules set out to govern civil proceedings. The rules governing notice and service of process by citation are governed by the rules governing civil cases. Art. 59.04(b) and (i). The rules governing pleadings in forfeitures are those set out for civil cases. Art. 59.05(a). The burden of proof is by a preponderance of the evidence. Art. 59.05(b).

It is evident that the property, and not an individual, is the target of forfeiture when the statutes provide that a forfeiture can even take place in the absence of an owner, interest holder or possessor. See Art. 59.04(k). As with the federal forfeiture statute, there is no requirement in the Texas statute that "the State demonstrate scienter in order to establish that the property is subject to forfeiture." Under this provision, it is conceivable that property could be forfeited if no owner or interest holder files a claim to it and the State fails to demonstrate a connection between the property and a particular person. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149; see, also, *U.S. v. McCaslin,* 959 F.2d 786 (9th Cir.1992), cert. denied 506 U.S. 942, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992)(wherein, the Ninth Circuit found the forfeiture of property that was the instrumentality of a crime was "independent of, and wholly unaffected by any criminal proceeding in personam," quoting *The Palmyra,* 25 U.S. (12 Wheat.) 1, 14–15, 6 L.Ed. 531 (1827).).

■ The idea that property, and not persons, are the target of Texas forfeiture proceedings is also reflected in the Legislature's decision to not require that there be a final conviction for an underlying criminal offense in order for a forfeiture proceeding to proceed. Under the Texas statute, an acquittal for an underlying offense does nothing more than raise a presumption which the State can overcome by rebuttal and still obtain a successful forfeiture. Art. 59.05(d). From these provisions, it is evident that it is not necessary that the owner or interest holder be the person charged with the commission of an underlying criminal offense, so long as the property is shown to be contraband under the statutory definitions. The property, its uses, intended uses, or point of origin as proceeds, is the target of the Texas forfeiture provisions. The fact that the State may, at the civil in rem proceeding, proffer the offenses committed by the holder of the property does not make the forfeiture a punishment for those offenses. See *Ursery,* J. Kennedy, concurring, at 2199.

These factors lead to the conclusion that forfeitures under the Texas statutory provisions were meant to be civil in rem proceedings. The Courts of Appeals and the Texas Supreme Court have also reached this conclusion in hearing the appeals of civil forfeitures. *State v. Rumfolo, et al.,* 545 S.W.2d 752, 754 (Tex.1977); *$191,452.00 v. State,* 827 S.W.2d 430, 433 (Tex.App.Corpus Christi 1992); and *Fleming v. State,* 704 S.W.2d 530, 531 (Tex.App.-Houston [14 Dist.] 1986). In light of the decisions of the Court in *Various Items, Emerald Cut Stones, 89 Firearms,* and *Ursery,* "and the long tradition of federal statutes providing for a forfeiture proceeding following a criminal prosecution, it is absolutely clear that in rem civil forfeiture has not historically been regarded as punishment." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. We hold that the Texas Legislature intended that forfeiture proceedings under Art. 59 be civil and not criminal.

■ Under *Ursery,* the second stage of the analysis of our forfeiture statute involves whether there is evidence (by the "clearest proof") to suggest that Art. 59 forfeiture proceedings are "so punitive in form and effect as to render them criminal" despite the Legislature's intent to the contrary. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. As in the case of the Federal forfeiture statutes in

*Ursery,* the Texas forfeiture statute appears to serve "important nonpunitive goals." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148.

Chapter 59 provides for the forfeiture of "property of any nature" that is "used, or intended to be used, in the commission of" any felony under the Controlled Substances Act, proceeds gained from the commission of said felony, or "acquired with proceeds" gained from the commission of that felony. Art. 59.01 (2)(B), (C), and (D). By requiring the forfeiture of property used, or gained, in the manner set out in the statute, property owners will be "encouraged to take care in managing their property." There will also be some assurance "they will not permit that property be used for illegal purposes." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148; and cases cited therein.

Also, requiring the forfeiture of property that is a proceed of illegal activity, or acquired with the proceeds of that activity, serves the nonpunitive goal of "ensuring that persons do not profit from their illegal acts." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. In *U.S. v. Tilley,* 18 F.3d 295 (5th Cir.1994), cert. denied —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994), the Government sought the forfeiture of approximately $650,000.00 in illegal proceeds. The 5th Circuit Court of Appeals explained how the forfeiting party lost nothing "to which the law ever entitled him."

> the forfeiture of approximately $650,000.00 of illegal proceeds does not punish the defendant because it exacts no price in liberty or lawfully derived property from him. The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity.

*U.S. v. Tilley,* 18 F.3d at 300. For that reason, the Fifth Circuit concluded the forfeiture of illegal proceeds, "much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment 'within the plain meaning of the word.'" *Tilley,* ibid.

In some cases, a remedial goal will be served where the forfeiture of property that is used or intended to be used in the commission of a violation of the Texas Controlled Substances Act succeeds in abating a nuisance. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148; and cases cited therein. We hold the Texas forfeiture statutes have not been shown by the "clearest proof" to be "so punitive in form and effect as to render them criminal."

Consequently, we hold the *in rem* civil forfeitures prescribed by Chapter 59 are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause of the Fifth Amendment.

## V. FACTS OF INSTANT CASE

■ In its Original Notice of Seizure and Intended Forfeiture the State alleged the currency, pistols and cellular telephone seized from appellant were all contraband as defined in Chapter 59 and thereby subject to forfeiture. By the terms of the statute, this allegation means the currency, pistols and cellular telephone were either the proceeds from or the instruments of criminal activity.

As pointed out above, the State and appellant agreed to a forfeiture in the instant case. The parties further agreed that $1,500.00 in currency and the two pistols were not subject to forfeiture. We can presume from this agreement that the $1,500.00 and the pistols were not contraband. Both parties also agreed that $3,823.00 and the cellular telephone were forfeited to the City of Baytown in compliance with Chapter 59. We can presume both from this agreement, the terms of the State's Original Notice of Seizure and Intended Forfeiture, and the terms of Chapter 59 that the $3,823.00 in currency and the cellular telephone were contraband as defined in Art. 59.01. In other words, the currency and cellular telephone were property that were used or intended to be used in the commission of a specified crime, or property that were the proceeds of, or acquired with

the proceeds from, the commission of a specified crime.

The Court of Appeals erred in holding the forfeiture statute was punitive. As explained above, Chapter 59 provides for civil in rem proceedings that are not punitive in nature. Therefore, we hold that the forfeiture of appellant's property pursuant to Chapter 59 was a civil in rem proceeding that was neither punitive nor criminal in nature for purposes of the Double Jeopardy Clause of the Fifth Amendment. We sustain the State's ground for review and reverse the judgment of the Court of Appeals.[9] The instant case is remanded to the trial court for the defendant to answer the indictment.

CLINTON, J., concurs in result.

MEYERS, Judge, concurring.

The Court's analysis of legislative intent is accurate in most respects. Certainly, the forfeiture statute at issue in this case has many characteristics of a civil *in rem* proceeding with nonpunitive objectives. Tex. Code Crim Proc. ch. 59. For example, a lawsuit filed pursuant to the statute evidently does not depend for its success upon the trial court's obtaining personal jurisdiction of the property owner or of any other human being. Eligible property may be taken by the State even when no person is punished thereby. And there are other unmistakable earmarks of a nominally civil cause of action throughout the statute.

But the legislative record of its enactment is not entirely devoid of evidence tending to suggest that this statute was really meant by the Legislature as a punishment for criminal conduct. The core provisions of Chapter 59 evidently had their beginning as House Bill 8 in the Regular Session of the 71st Legislature. After that, however, the bill received no further significant attention and was left pending when the Regular Session came to a close. But it was resurrected as House Bill 65 in virtually the same form at the 1st Called Session of the same Legislature a month or so later. At that time, the House

Research Organization's analysis of the bill on July 14, 1989 describes its supporters' position as follows.

HB 65 would increase the punishment of criminals by allowing the state to confiscate property connected with almost any felony, rather than the limited crimes covered by current law. This bill, similar to the bill introduced during the regular session as part of Speaker Lewis' anti-crime package, would hit hard at the economic incentives for crime by expanding the amount of crime-connected property subject to being forfeited. The economic power of a crime organization could be crushed by the confiscation of its assets.

This bill was eventually passed by both houses after bouncing around for a while between them. *See* Acts 1989, 71st Leg., 1st C.S., ch. 12, § 1, eff. Oct. 18, 1989. Since then it has been amended several times, none of which amendments is significant to the present inquiry except the last, in which the Legislature added to subdivision (e) of article 59.05 the following statement: "It is the intention of the legislature that asset forfeiture is remedial in nature and not a form of punishment." Had the legislative history actually reflected an intent to create a remedial statute in the first place, no such amendment would ever have been thought necessary. It is only because the few sources of legislative purpose tend to support a contrary conclusion and because intervening case law from the United States Supreme Court raises the specter of a jeopardy bar that reinterpretation of the legislative purpose now seems desirable. *See United States v. Halper,* 490 U.S. 435, 442–444, 109 S.Ct. 1892, 1898–1900, 104 L.Ed.2d 487 (1989); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Montana Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

Nevertheless, in a very recent opinion examining the jeopardy implications of forfeiture under a federal statute remarkably similar to the one here in issue, the United States Supreme Court seems to have held that the

---

**9.** As appellant advanced no separate analysis or argument before this Court of a claim under the Texas Constitution, see Note 2, infra, our holding pursuant to the Fifth Amendment is dispositive of the issue before us.

*in rem* character of a civil lawsuit necessarily places it beyond the reach of the Double Jeopardy Clause. *United States v. Ursery,* 518 U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Although the Supreme Court did emphasize that analysis of jeopardy complaints involving successive *in rem* forfeiture proceedings and criminal prosecutions should begin with an inquiry whether the legislature intended forfeiture to be an additional penalty for the commission of crime, the Court seemed willing to conclude that the intrinsically noncriminal character of such a proceeding was sufficient in itself to settle the question without recourse to an examination of the actual motives underlying enactment of the forfeiture law. In my view, this rationale is at odds with that of the Court in its other recent opinions on the same general subject. *See Halper, Austin,* and *Kurth Ranch.* But I am persuaded on balance that the Supreme Court would not hold a successive forfeiture of property under Chapter 59 after criminal prosecution based generally on the same conduct, or vice versa, to be jeopardy barred under the United States Constitution, given its recent holding in *Ursery.* Accordingly, I join the opinion of this Court in the instant cause.

MANSFIELD, Judge, concurring.

I join the opinion of the Court and write separately only to supplement the well-written majority opinion.

A civil forfeiture under Texas Code of Criminal Procedure Article 59.02 potentially implicates two provisions of the United States Constitution: the Excessive Fines Clause of the Eighth Amendment and the Double Jeopardy Clause of the Fifth Amendment. Additionally, it must be determined whether the property to be forfeited is proceeds from criminal activity or the instrumentality of criminal activity, as property not falling under one of those two categories enjoys greater constitutional protection.

## I. The Excessive Fines Clause and Civil Forfeitures

"Excessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII (emphasis added). The Supreme Court, in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), addressed whether the Excessive Fines Clause applied to forfeitures under 21 U.S.C. § 881(a)(4) and (a)(7), the federal Controlled Substances Act. In *Austin,* the defendant pled guilty in state court to possession of cocaine with intent to distribute and was sentenced to seven years imprisonment. Subsequently the federal government filed an *in rem* action in federal district court seeking forfeiture of defendant's auto body shop and mobile home. Evidence was introduced defendant sold two grams of cocaine to a Keith Engebretson at his auto body shop. A subsequent search of defendant's mobile home uncovered small amounts of marihuana and cocaine, a gun, drug paraphernalia and $4700 in cash. Summary judgment for the government was granted and the Court of Appeals affirmed. 964 F.2d 814 (8th Cir.1992).

In reversing the judgment of the Court of Appeals, the Supreme Court held that the Excessive Fines Clause does apply to civil forfeitures under 21 U.S.C. § 881(a)(4) and (a)(7). The Court further held that such forfeitures are properly considered as "punishment," noting the legislative history which characterizes forfeitures of real property as "a powerful deterrent," the inclusion of an innocent owner defense and the language of the statute itself which states property is forfeitable only if tied directly to the commission of drug offenses. *Austin,* 509 U.S. at 620, 113 S.Ct. at 2811. "We therefore conclude that forfeiture under these provisions constitutes 'payment to a sovereign as punishment for some offense,' *Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989), and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Austin,* 509 U.S. at 621–623, 113 S.Ct. at 2812.

The Court reversed and remanded the cause to the court of Appeals to determine if the forfeiture violated the Excessive Fines Clause. The Court did not establish any guidelines to be used in the determination of whether a particular *in rem* forfeiture is excessive. Justice Scalia's concurring opin-

ion states that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense. *Austin,* 509 U.S. at 625–627, 113 S.Ct. at 2814, 2815.

It does seem clear, however, that forfeiture of a $30,000 vehicle as result of an individual being convicted of a Class B misdemeanor of possession of marihuana because a single marihuana cigarette was found in the vehicle's ashtray would be excessive and barred as such by the Excessive Fines Clause. A different result may well be indicated if that same vehicle was used to transport significant amounts of controlled substances. Such a proportionality review is to be conducted by the trial court and is, on appellate review, subject to an abuse of discretion standard.

*However, Austin* is not relevant to the present case. Chapter 59 forfeitures are a limited category of forfeitures, as a forfeiture under Chapter 59 may occur only if the State proves the property to be forfeited, by a preponderance of the evidence, to be contraband, i.e., proceeds of criminal activity or which was used to facilitate commission of crimes. Such forfeitures thus should be analyzed using the standards established by the Supreme Court in *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).[1] In *Halper,* the Supreme Court addressed whether a civil sanction may be considered as punishment, and thereby implicate the Fifth Amendment's double jeopardy clause so as to bar a subsequent criminal prosecution of the person whose property has been forfeited. As appellant in the present case alleges a double jeopardy claim, *Austin, supra,* which addressed only the Eighth Amendment implications of civil forfeitures, is not on point, as appellant, in the present case, did not allege an Eighth Amendment claim. The court of appeals erred in relying on *Austin* in the present case. The correct standard of review is found in *Halper, supra.*

## II. The Double Jeopardy Clause and Civil Forfeitures

"... nor shall any person be subject for the same offence to be twice put in jeopardy

of life or limb ..." U.S. Const. amend. V. In *U.S. v. Halper, supra,* Halper was convicted of filing 65 Medicare false claims, and was sentenced to two years' imprisonment and a fine of $5,000. The evidence showed the total loss to the government was $585. The cost of prosecuting Halper was approximately $16,000.

The government then brought a civil action under the False Claims Act, 31 U.S.C. §§ 3729–3731, under which Halper was subject to a penalty of $2000 for each false claim, for a total of $130,000. The district court concluded, in light of Halper's previous criminal punishment, an additional penalty this large would violate the Double Jeopardy Clause's prohibition on multiple criminal punishments for the same offense.

The Supreme Court unanimously held that the "government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the government whole." *Halper,* 490 U.S. at 451, 109 S.Ct. at 1903.

The Court acknowledged that a civil sanction following a criminal conviction that compensates the government for its costs of prosecution and actual damages is remedial in nature and is not punishment. Such a civil sanction does not implicate the Double Jeopardy Clause. "We therefore hold that under the Double Jeopardy Clause a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be characterized as remedial, but only as a deterrent or retribution.... Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the

---

**1.** This is not to say, however, that Chapter 59 forfeitures, in some instances, may not violate the Excessive Fines Clause.

government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the government may receive without crossing the line between remedy and punishment." *Halper,* 490 U.S. at 450, 109 S.Ct. at 1902.

Consistent with *Halper,* it is clear that where the State subsequently files a civil sanction, or, in my opinion, a civil forfeiture, action against an individual against whom it has already obtained a criminal conviction, it must demonstrate to the trial court that the amount of the forfeiture or sanction it seeks is "remedial," i.e., the amount is rationally related to the costs of prosecution and damages it sustained as a result of the individual's criminal conduct, and in the case of a civil forfeiture, the property sought to be forfeited is the proceeds of criminal activity or used in the commission of a crime, i.e., "contraband." Any forfeiture or sanction in excess of such an amount or that is not "contraband" is punishment and is barred by the Double Jeopardy Clause.[2]

### III. The Present Case

In the present case, appellant was charged with possession of a controlled substance with intent to deliver. The State then initiated forfeiture proceedings under Chapter 59, alleging that cash and other property seized from appellant at the time of his arrest was contraband as defined in Article 59.01 and thereby subject to forfeiture. Appellant and the State entered into an agreement by which he agreed to forfeit $3823 and a cellular phone. The agreement stipulated that an additional $1500 and two weapons were "not subject to forfeiture." Appellant contends the Double Jeopardy Clause bars prosecution of the pending drug charge because the forfeiture proceeding constitutes "punishment."

The majority correctly notes that Chapter 59 requires the State to allege and prove that property is contraband before it may be forfeited. To be contraband, the property must be proven to be the proceeds from or the instruments of a criminal act enumerated in Article 59.01(2)(A) and (2)(B). In the present case, the State alleged the cash, pistols and cellular phone seized from appellant were contraband, i.e., either the proceeds from or the instruments of criminal activity. Appellant never contested the State's allegation the property was contraband and, in effect, agreed with the State's allegation by agreeing to the forfeiture of $3823 and the cellular phone. The court of appeals erred in that it never determined if the property was contraband.

Using the standards established in *Halper,* forfeitures of property proven to be contraband as that term is defined in Chapter 59 are always remedial. The court of appeals ruling, in effect, could result in the State, after having obtained a conviction against a defendant for aggravated robbery, being barred on double jeopardy grounds from bringing a subsequent civil forfeiture action to recover the robbery proceeds. In effect, Chapter 59 merely allows the State to prevent individuals from retaining property proven to have been unlawfully used or obtained, that is, contraband. Denying convicted criminals of the retention of the proceeds of their criminal activity or of property used to facilitate their criminal activity via civil forfeitures of such property is remedial as such property was not legitimately obtained or used. Therefore, forfeitures of property proven to be contraband, as that term is defined in Chapter 59, are not punishment and the Double Jeopardy Clause's protections are not implicated.

The majority cites *U.S. v. Tilley,* 18 F.3d 295 (5th Cir.1994) and *U.S. v. McCaslin,* 959 F.2d 786 (9th Cir.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992) in support of its holding that Chapter 59 forfeitures of contraband are not punishment for purposes of the Double Jeopardy Clause. In *Tilley, supra,* the defendants were the subject of civil forfeiture proceedings commenced in 1991. In 1992, they were indicted for various drug offenses committed between 1986 and 1991. In February of 1993, the

---

**2.** We note that in *Halper,* unlike the present case, there was no forfeiture of property alleged to be either proceeds of criminal activity or instrumentalities of criminal activity.

defendants agreed, in writing, to forfeit approximately $650,000 in cash and property to the government. In April of 1993, the defendants moved for dismissal of the pending drug charges, alleging, as a result of the prior civil forfeiture proceedings, they were being subjected to multiple punishments for the same crimes in violation of the Double Jeopardy Clause.

The Fifth Circuit noted that in *Halper, supra,* the $130,000 sanction did not represent the proceeds of the crime for which Halper was convicted, whereas in *Tilley, supra,* the $650,000 forfeiture represented only a portion of the revenue derived from defendants' large-scale drug operation. The court stated "under *Halper* we must classify the civil forfeiture of the unlawful proceeds of illegal drug sales under § 881(a)(6) as a punishment under the Double Jeopardy Clause if, in this particular case, the amount of the proceeds forfeited was so great that it bore no rational relation to the costs incurred by the government *and society* resulting from the defendant's criminal conduct." *Tilley, supra,* at 299 (emphasis added).

The Fifth Circuit compared, correctly, proceeds of drug sales to the proceeds derived from a bank robbery and their forfeiture "merely places that party in the lawfully-protected financial status quo that he enjoyed prior to launching his illegal scheme....The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity." *Tilley, supra,* at 300. See also, *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016–1018, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992); *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626, 109 S.Ct. 2646, 2652–53, 105 L.Ed.2d 528 (1989). Because an individual *never* was legally entitled to possess property

derived from the illegal sale of drugs or any other criminal activity, the Double Jeopardy Clause is not implicated when the State, pursuant to Chapter 59, successfully institutes a forfeiture action against an individual alleging property owned by that individual is the proceeds of criminal activity enumerated in Chapter 59 and proves, by a preponderance of the evidence, the allegation is true. Accordingly, the State may subsequently prosecute said individual criminally.

*Halper* also applies where the State institutes a forfeiture action against an individual under Chapter 59 alleging property of the individual was the instrumentality for the commission of a crime. As the Ninth Circuit held in *United States v. McCaslin,* 959 F.2d 786 (9th Cir.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), double jeopardy has no application to the forfeiture of property which is proven to have been the instrumentality of a crime. In *McCaslin, supra,* the government sought forfeiture of real property of the defendant which he had used to grow marihuana.[3] Subsequently, the government indicted the defendant for growing marihuana. The district court denied defendant's motion to dismiss the indictment on grounds of double jeopardy and he was convicted. The Ninth Circuit affirmed, holding "there is no necessary relation between the value of the property forfeited and the loss to the government, nor is there any necessary proportion between the value of the property forfeited and the criminal use of the property....Double jeopardy has no application." *McCaslin, supra,* at 788. See also, *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362–365, 104 S.Ct. 1099, 1105–1106, 79 L.Ed.2d 361 (1984); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683–685, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); *United States v. A Parcel of Land with a Building Thereon,* 884 F.2d 41 (1st Cir.1989).

### Conclusion

The Double Jeopardy Clause of the Fifth Amendment has no application to a civil for-

---

**3.** A forfeiture of property alleged and proven to be the instrumentality of a crime may, in some cases, violate the Excessive Fines Clause of the Eighth Amendment. For example, an Excessive Fines Clause violation may be present where the government seeks forfeiture of a million dollar home as an instrumentality of crime because it finds one marihuana plant growing in the back yard. However, in the present case, appellant did not raise an Eighth Amendment claim.

feiture of property proven to have been an instrumentality of crime based on the holdings in *McCaslin, supra,* and the other cases cited in the preceding paragraph. Accordingly, an individual who forfeits property pursuant to Chapter 59, proven to be an instrumentality of crime may subsequently be prosecuted for crimes related to the use of that property and the subsequent criminal proceeding is not barred by double jeopardy.

The Double Jeopardy Clause also is not implicated where an individual forfeits property, pursuant to Chapter 59, proven to be the proceeds of criminal activity, and then is subsequently prosecuted for crimes related to acquisition of that property. Appellant, in the present case, did not contest the forfeiture of the cash and the phone; indeed, appellant agreed to the forfeiture. Thus, the State's allegation that said cash and phone were contraband was never disputed by appellant.[4]

With these comments, I join the opinion of the Court.[5]

---

**4.** Although not raised by the parties in their briefs, it is an open question as to whether, by entering into the agreed judgment of forfeiture dated June 21, 1993, appellant waived his right to claim that the Double Jeopardy Clause bars any subsequent criminal proceeding.

**5.** The Supreme Court, in *United States v. Ursery,* 95–345 (June 24, 1995) held that in rem forfei-

tures do not implicate the Double Jeopardy Clause of the United States Constitution as they are not "punishment." Left open, however, is the possibility that an in rem forfeiture may, in some instances, run afoul of the Excessive Fines Clause of the Eighth Amendment. The holding in *Ursery,* in my opinion, defeats appellant's double jeopardy claim in the present case.