**FOUR B'S INC. d/b/a Action Pawn #1, Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. 03–94–00255–CV.**

Court of Appeals of Texas, Austin.

June 21, 1995.

Rehearing Overruled Aug. 16, 1995.

Roger Moore, Gray & Becker, P.C., Austin, for appellant.

Arthur Cappy Eads, Dist. Atty., Sean K. Proctor, Asst. Dist. Atty., Belton, for appellee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

PER CURIAM.

Following Deyarl Matheny's conviction of theft by check, the State moved to restore one of the stolen items, a Mossberg .12 gauge shotgun, to its owner, L.M. Kaster. Tex. Code Crim.Proc.Ann. art. 47.02 (West 1979). Appellant Four B's Inc. d/b/a Action Pawn #1 intervened in the proceeding and asserted its right to the gun as a good faith purchaser from Matheny. The trial court or-

dered the gun restored to Kaster, from which order Four B's appeals. We will affirm the trial court's judgment.

## JURISDICTION

Article 47.02 of the Code of Criminal Procedure provides that after a trial for the illegal acquisition of property, "the court trying the case shall order the property restored to the person appearing by the proof to be the owner." (West 1979). The State initially contends that this Court lacks jurisdiction of the appeal. The State argues that a proceeding to restore property is a criminal proceeding that is legislatively created and that the legislature has not provided for an appeal. *See generally* Tex.Code Crim.Proc. Ann. ch. 47 (West 1979 & Supp.1995).

The Code of Criminal Procedure provides in two different articles for proceedings to restore property, one for proceedings that occur before the related criminal trial and another for proceedings during or after the criminal trial. Tex.Code Crim.Proc.Ann. arts. 47.01a, 47.02 (West 1979 & Supp.1995). The State points out that in 1993 the legislature amended chapter forty-seven to authorize an appeal from a property disposition made before the related criminal trial is held. Tex.Code Crim.Proc.Ann. art. 47.12 (West Supp.1995).[1] The amendment implies that no previous right to appeal a property disposition existed under chapter forty-seven and that, by allowing an appeal only from proceedings that occur before the criminal trial, an appeal is prohibited from proceedings that occur during or after trial. The State emphasizes that the right to appeal in a criminal case is conferred by statute. *Savage v. State*, 237 S.W.2d 315, 317 (Tex.Crim.App. 1950). *See Morris v. State*, 749 S.W.2d 772, 774 (Tex.Crim.App.1986).

In characterizing a proceeding to restore property as a criminal proceeding, the State relies on the court of criminal appeals' opinion in *State ex rel. Holmes v. Court of Appeals for the Third District*, 885 S.W.2d 389 (Tex.Crim.App.1994). The State views

*Holmes* as culminating a line of cases that expansively define a "criminal law matter." *E.g., Curry v. Wilson*, 853 S.W.2d 40 (Tex. Crim.App.1993); *Smith v. Flack*, 728 S.W.2d 784 (Tex.Crim.App.1987); *Weiner v. Dial*, 653 S.W.2d 786 (Tex.Crim.App.1983). We disagree that *Holmes* is decisive. In *Holmes*, the court of criminal appeals examined whether its mandamus power extended to a court of appeals' order enjoining an execution. *Holmes*, 885 S.W.2d at 392. Because the court of criminal appeals' mandamus power is limited to "criminal law matters," the court first determined whether the court of appeals' injunction was a criminal law matter. *Id.* at 393.

The constitution distinguishes between "criminal law matters" and "criminal cases," granting the court of criminal appeals final appellate jurisdiction in the latter while granting it mandamus jurisdiction in the former. Const. art. V, § 5. *See also* Tex.Code Crim.Proc.Ann. art. 4.04 (West Supp.1995). Because our case does not concern the mandamus power of the court of criminal appeals, the definition of a "criminal law matter" is not helpful.

■ We therefore do not read *Holmes* as invalidating earlier opinions in which courts have held a proceeding to restore property to be a civil case. *See Bretz v. State*, 508 S.W.2d 97, 97–98 (Tex.Crim.App.1974); *Nelms v. State*, 761 S.W.2d 578, 579 (Tex. App.—Fort Worth 1988, no writ); *Williams v. State*, 562 S.W.2d 889, 890 (Tex.Civ.App.— El Paso 1978, writ dism'd). In *Williams*, for instance, the court determined that it lacked jurisdiction over an appeal from a proceeding to restore property because the requirement for a civil appeal, that over one hundred dollars be in controversy, was not met. *Williams*, 562 S.W.2d at 890. *See* Tex.Civ. Prac. & Rem.Code Ann. § 51.012 (West 1986); Tex.Gov't Code Ann. § 22.220 (West 1988). We adhere to the holdings in *Bretz, Nelms*, and *Williams* that a proceeding to restore property is a civil case.

---

1. The 1993 amendment applies only to property that comes into police custody on or after August 30, 1993. Act of May 22, 1993, 73d Leg., R.S., ch. 860, § 3, 1993 Tex.Gen.Laws, 3372, 3373;

Tex.Code Crim.Proc.Ann. art. 47.12 cmt. (West Supp.1995). It would not apply to the Mossberg shotgun here, which came into police custody before that date.

We also note that proceedings to restore property are similar to forfeiture proceedings in that both concern the disposition of various types of contraband. *See* Tex.Code Crim.Proc.Ann. ch. 59 (West Supp.1995). Forfeiture proceedings have uniformly been considered civil cases. *E.g., State v. Rumfolo,* 545 S.W.2d 752, 754 (Tex.1976); *$22,-922.00 v. State,* 853 S.W.2d 99, 101 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Dancy v. Cave,* 760 S.W.2d 40, 44 (Tex.App.—Amarillo 1988, no writ).

The courts of appeals have appellate jurisdiction of civil cases in which the amount in controversy exceeds one hundred dollars. Tex.Gov't Code Ann. § 22.220 (West 1988); Tex.Civ.Prac. & Rem.Code § 51.012 (West 1986). Because the proceeding here is a civil case over which this Court has appellate jurisdiction, we overrule the State's cross-point of error.

## DISCUSSION

In its first and second points of error, Four B's argues that the trial court erred in concluding that section 2.403 of the Business and Commerce Code does not apply to determinations of ownership under article 47.02. *See* Tex.Bus. & Com.Code Ann. § 2.403 (West 1994). The trial court specifically concluded that subsection (a)(2) of section 2.403 did not apply to the disposition of stolen property. Subsection (a)(2) confers on a purchaser who takes delivery of goods in a sales transaction the power to transfer a good title even though the delivery was in exchange for a check that is later dishonored. Tex.Bus. & Com.Code Ann. § 2.403 (West 1994).

Four B's reasons that under the Business and Commerce Code, Matheny had the power to pass a good title to a good faith purchaser for value. If Four B's qualified as such a good faith purchaser, it acquired a title in the gun superior to Kaster's and was entitled to be awarded the gun.

The language of article 47.02 shows no intent to adopt the standards of the Business and Commerce Code, stating only that the court shall order the property restored to the person "appearing by the proof" to be the owner of the property. Generally, a pawnbroker acquires no right against the true owner to retain possession of an article pawned without the knowledge, consent, or authority of the owner. 47 C.J.S. *Interest and Usury; Consumer Credit* § 358 (1982). If a pawnbroker, who is not required by a police officer or court to hold property for trial, withholds property from a person who presents valid proof of ownership and demands the return of the property, the pawnbroker is liable for conversion. *Reiner v. Marceau,* 338 S.W.2d 285, 288 (Tex.Civ. App.—Houston [1st Dist.] 1960, no writ). The court also held in *Reiner* that the pawnbroker's good faith in receiving the goods was immaterial to the owner's claim for actual damages. 338 S.W.2d at 289.

Certain provisions of the Texas Pawnshop Act shed further light on the question of whether Four B's is entitled to acquire a good title in the pawned gun. *See* Tex.Rev. Civ.Stat.Ann. arts. 5069–51.01—.17 (West 1987 & Supp.1995) ("Act"). The Act declares it the policy of this state to exercise its police power to ensure a sound system of pawn loans and to prevent unlawful property transactions, particularly in stolen property. Act, art. 5069–51.01A (West 1987). The Act prohibits pawnbrokers from buying used property unless a record is kept that identifies the seller, describes the property, and includes the seller's signed statement that he has the right to sell the property. Act, art. 5069–51.16(a)(9) (West Supp.1995). The Act authorizes penalties for violating any provision therein. Act, art. 5069–51.17 (West 1987 & Supp.1995).

A pawnbroker must monitor the goods it acquires to identify and prohibit transactions involving stolen goods. Act, art. 51.17B(j) (West Supp.1995). Further, the Consumer Credit Commissioner must adopt rules that permit a consumer who has filed an offense report with a local law enforcement agency to ask a pawnbroker to search the shop's records and that permit the pawnbroker to help the consumer and law enforcement agency locate and recover stolen property. Act, art. 5069–51.17B(q) (West Supp.1995).

Rather than legitimizing a pawnshop's good faith purchase of stolen property, the provisions of the Pawnbroker Act show

an intent that pawnbrokers not receive and assert title to stolen property. The inability of a pawnbroker to prevail against a property owner suing for conversion and the policy advanced by the Pawnbroker Act establish that pawnshops do not take a good title to stolen property. Because the trial court correctly denied Four B's the protection of the Business and Commerce Code, we overrule points one and two.

In point of error three, Four B's asserts that the trial court erroneously concluded that it was not a good faith purchaser for value. In point four, Four B's contends that the trial court erroneously determined that the property belonged to Kaster. Because Four Bs' argument under both points assumes that the Business and Commerce Code applies, we overrule points three and four.

We affirm the judgment of the trial court.