Tipton International, et al. v. Davenport, etal.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00242-CV

     TIPTON INTERNATIONAL, INC. 
     AND FEDERATED MUTUAL 
     INSURANCE COMPANY, INC.,
                                                                              Appellants
     v.

     H.M. DAVENPORT, GEORGE ST. CLAIR,
     MARK SUMMITT, JERRY HEPLER AND
     CORSICANA NATIONAL BANK & TRUST, N.A.,
                                                                              Appellees
 

From the 13th District Court
Navarro County, Texas
Trial Court # 01-00-11053-CV
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Tipton International and its insurer, Federated Mutual Insurance Company, appeal the
decision of the 13th District Court of Navarro County to award ownership of four Kubota
tractors to H.M. Davenport, George St. Clair, Mark Summit, and Jerry Helper. They also
appeal the award of attorneys fees to Davenport, St. Clair, Summit, and Helper. We affirm.
 
Background
      In June of 2000, R.D. Plunkett delivered two temporary checks to Tipton’s Waco
dealership for four Kubota tractors. The two temporary checks were signed by Joe Hardeman,
Jr. Plunkett did not take delivery of the tractors on that day but did so a few days later. Two
to three weeks later, Tipton presented one of the checks for payment, and it was dishonored
for insufficient funds. The other check was never presented. But by the time the first check
was dishonored, Plunkett had sold the tractors to Justin Chapman, who sold the tractors to
William Skinner, who sold the tractors to B&B Motors in Corsicana, Texas. B&B, during
June through August, sold the tractors to 1) Mark Summitt, 2) George St. Clair, 3) Jerry
Helper, and 4) H.M. Davenport, the Owners. Corsicana National Bank & Trust has a security
interest in three of the tractors. Federated paid Tipton for the tractors.
      Eventually, Plunkett was arrested for theft. The 19th District Court of McLennan County
issued a seizure warrant for the tractors which was executed. Plunkett’s theft charge was
pending in the 54th District Court of McLennan County. Soon after the seizure warrants were
issued, the Owners and the Bank filed suit in Navarro County, asking to be declared the
owners of the tractors. The 13th District Court of Navarro County agreed to allow the tractors
to remain in McLennan County under the control of the Department of Public Safety until
further orders of the court.
      The Owners filed a motion for partial summary judgment on the issue of ownership. 
Tipton and Federated filed a plea in abatement. The plea was denied, and the motion for
partial summary judgment was granted. After a bench trial on attorneys fees, the trial court
awarded fees to the Owners and the Bank.
Exclusive Jurisdiction
      In their first issue, Tipton and Federated contend that because the tractors were “stolen,”
Chapter 47 of the Texas Code of Criminal Procedure provides exclusive jurisdiction for the
determination of the ownership of the property. Thus, they argue, because an indictment for
theft of the tractors had been filed against Plunkett in a McLennan County district court, the
Navarro County trial court had no jurisdiction to determine ownership.
      Tipton and Federated are correct in asserting that Chapter 47 provides for the restoration
of property alleged to have been stolen. But they are incorrect in arguing that it provides
exclusive jurisdiction to determine ownership of that property.
      When a trial is pending for theft or similar offense, the applicable statute, article 47.02,
provides:
Upon the trial of any criminal action for theft, or for any other illegal acquisition
of property which is by law a penal offense, the court trying the case shall order the
property to be restored to the person appearing by the proof to be the owner of the
same.
Likewise, the judge of any court in which the trial of any criminal action for theft
or any other illegal acquisition of property which is by law a penal offense is pending
may, upon hearing, if it is proved to the satisfaction of the judge of said court that any
person is a true owner of the property alleged to have been stolen, and which is in
possession of a peace officer, by written order, direct the property to be restored to
such owner.

Tex. Code Crim. Proc. Ann. art. 47.02 (Vernon Pamp. 2004)(emphasis added). No
criminal trial had taken place at the time of the hearing on the Owners’s motion for partial
summary judgment. Thus, we look to the second paragraph of article 47.02.
      When construing and applying a statute, our purpose is to effectuate the legislature’s
intent. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). If the statute is clear
and unambiguous, we may not add or subtract from its literal meaning. Id. At the time of the
motion for summary judgment, there had been no criminal trial in this case. The statute uses
no mandatory language in the disposition of allegedly stolen property at this juncture of the
proceeding. And there is nothing in the plain language of the statute that vests exclusive
jurisdiction to determine ownership of allegedly stolen property with the court where the
criminal case is pending.
      Tipton and Federated rely on this Court’s opinion in White v. State and the Austin Court’s
opinion in Four B’s Inc. v. State for the proposition that Chapter 47 provides exclusive
jurisdiction for the determination of the ownership of allegedly stolen property. See White v.
State, 930 S.W.2d 673 (Tex. App.—Waco 1996, no writ); Four B’s Inc. v. State, 902 S.W.2d
683 (Tex. App.—Austin 1995, writ denied). They misconstrue those opinions. In White, the
question on appeal was whether this Court had jurisdiction of the appeal. White was appealing
the decision of a justice court which awarded parts of his pickup to the State pursuant to article
47.01a (where no criminal action is pending). White missed the time to appeal as set out in
article 47.12. Thus, this Court had no jurisdiction to entertain his appeal, and it was
dismissed. White, 930 S.W.2d at 677-78. Any discussion in White about the nature of cases
under Chapter 47 is superfluous. Also, White involved a hearing under article 47.01a. If
Chapter 47 applied at all to this case, it would be under article 47.02, not article 47.01a.
      Four B’s Inc. is also inapplicable to the disposition of this case. In Four B’s Inc., the
question on appeal from an article 47.02 hearing was whether Four B’s Inc., a pawnshop,
could acquire good title to stolen property. The court held it could not. Four B’s Inc., 902
S.W.2d at 686. In route to that decision, the court, with very little discussion, dismissed Four
B’s Inc.’s contention that it was a good faith purchaser under the Business and Commerce
Code. Id. at 685. Contrary to Tipton and Federated’s assertions, Four B’s Inc. did not hold
that Chapter 47 provides exclusive jurisdiction to determine ownership and disposition of the
property.
      We find nothing to indicate that the 13th District Court, a court of general jurisdiction, has
been deprived of its authority to decide the issue of disputed ownership of personal property. 
Given that theft can occur of property not in the lawful possession of another, the Code of
Criminal Procedure, through Chapter 47, has provided a method to allow the property to be
delivered to a person other than from whom it was taken. Nothing in the statute suggests that
Chapter 47 provides the exclusive forum for establishing ownership. Indeed, it would not be
surprising at all to find that, in some circumstances, the proof submitted to the court in which
the criminal case is pending is a judgment from another court which has determined ownership
of the disputed property. This is particularly appropriate when, as in this case, the criminal
defendant is alleged to have committed theft by check and the dispute over ownership is
between persons other than the defendant. For example, in this case, the dispute is between
the alleged victim of the theft by check and an alleged good-faith-purchaser.
      Thus, because, under the plain language of the statute, there is nothing to indicate that the
court in which the criminal proceeding is pending has the exclusive jurisdiction to determine
ownership of allegedly stolen property, the 13th District Court in Navarro County did not err
in asserting its jurisdiction to determine the ownership of the tractors. Tipton’s and
Federated’s first issue is overruled.
Summary Judgment
      In their second issue, Tipton and Federated argue that even if the trial court had
jurisdiction, the court erred in granting partial summary judgment because the Owners did not
satisfy their burden of proof on summary judgment.
      The standard of review for a summary judgment is well established: (i) the movant for
summary judgment has the burden of showing there is no genuine issue of material fact and is
entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true; and (iii) every reasonable inference must be indulged in favor of the nonmovant
and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548-49 (Tex. 1985); Larsen v. Carlene Langford & Assocs., 41 S.W.3d 245, 248-49
(Tex. App.—Waco 2000, pet. denied). The function of summary judgment is not to deprive
litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and
defenses. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (Tex. 1952).
      The Owners contend in their motion for summary judgment that they are good faith
purchasers under the Business and Commerce Code. They specifically rely on section
2.403(a)(2), and former sections


 1.201 (32), 1.201 (19), and 1.201(44)(D) of the Business and
Commerce Code. Section 2.403 provides that a person with voidable title has the power to
transfer a good title to a good faith purchaser for value. Tex. Bus. & Com. Code Ann. §
2.403(a) (Vernon 1994). “Good faith” means honesty in fact and the observance of reasonable
commercial standards of fair dealing. Tex. Bus. & Com. Code Ann. § 1.201(20) (Vernon
Supp. 2004). A purchaser is someone who takes by sale, lease, discount, negotiation,
mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary
transaction creating an interest in property. Id. (29) & (30). And, a person gives value for
rights if the person acquires them in return for any consideration sufficient to support a simple
contract. Tex. Bus. & Com. Code Ann. § 1.204(4) (Vernon Supp. 2004). When goods have
been delivered under a transaction of purchase, the purchaser also has the power to transfer
good title even though delivery was in exchange for a check which is later dishonored. Tex.
Bus. & Com. Code Ann. § 2.403(a)(2) (Vernon 1994).
      Section 2.403 gives certain transferors power to pass greater title than they can themselves
claim. In re Samuels & Co., 526 F.2d 1238, 1242 (5th Cir. 1976). Section 2.403(a) gives
good faith purchasers of even fraudulent buyers-transferors greater rights than the defrauded
seller can assert. Id. This harsh rule is designed to promote the greatest range of freedom
possible to commercial vendors and purchasers. Id. This Court has adopted the position taken
in In re Samuels & Co. See Villa v. Alvarado State Bank, 611 S.W.2d 483, 488 (Tex.
App.—Waco 1981, no writ).
      Section 2.403 anticipates a situation where (1) a cash seller has delivered goods to a buyer
who has paid by a check which is subsequently dishonored, and where (2) the defaulting buyer
transfers title to a Code-defined "good faith purchaser." In re Samuels & Co., 526 F.2d at
1242. The interest of the good faith purchaser is protected against the claims of the aggrieved
seller. Id. The Code expressly recognizes the power of the defaulting buyer to transfer good
title to such a purchaser even though the transfer is wrongful as against the seller. Id. The
buyer is granted the power to transfer good title despite the fact that he lacks the right to do so.
Id. The Code definition of "purchaser" is broad, and is, therefore, broad enough to include a 
secured party such as a bank. Id.
      The summary judgment evidence established that Joe Hardeman, Jr. purchased four
Kubota tractors from Tipton. Plunkett signed two invoices and presented two temporary
checks signed by Joe Hardeman, Jr. on June 2, 2000, for the purchase of the four tractors. 
The tractors were not delivered that day. Tipton presented check #002 for payment on June
16, 2000. It was dishonored for insufficient funds on June 19, 2000. Tipton received notice
of the dishonor approximately 3-7 days later. When the notice of dishonor was received,
Tipton called Hardeman’s bank to find out whether check #001 would clear. It would not. 
Check # 001 was never presented. Tipton claims the tractors were stolen.
      The parties do not dispute that Plunkett sold the tractors to Justin Chapman, who sold the
tractors to William Skinner, who sold the tractors to B&B Motors.
      On June 7, 2000, Mark Summitt, purchased one of the tractors from B&B Motors in
Corsicana, Texas, for $17,644.65. He paid $10,000 down and executed a promissory note and
security agreement in favor of Corsicana National Bank & Trust for the remainder. The note
was paid off.
      On June 13, 2000, George St. Clair purchased another one of the tractors from B&B
Motors. He paid $3,000 down and executed a promissory note and security agreement in
favor of the Bank for $24,010.00.
      On June 16, 2000, Jerry Helper, the intervening plaintiff, also purchased one of the
tractors from B&B Motors in Corsicana for $22,900.
      On August 7, 2000, H.M. Davenport purchased the fourth tractor from B&B Motors. He
financed the entire purchase price of $20,010.00. Davenport executed a promissory note and
security agreement in favor of the Bank.
      Summitt, St. Clair, Helper, and Davenport did not know Plunkett or Hardeman and did
not know Plunkett or Hardeman “had purchased or tried to purchase the tractor from Tipton.” 
They also did not know the tractors were allegedly stolen or that each had been purchased from
Tipton with an insufficient funds check. They each believed they paid a fair price for their
tractor.
      The Bank thought the purchase price of each tractor it financed was reasonable. If the
Bank had known the tractors were allegedly stolen or were purchased using insufficient funds
checks, it would not have involved itself in the transactions. Neither Plunkett nor Hardeman
had been customers of the Bank.
      Relying on Four B’s Inc. v. State, Tipton and Federated contend that the Business and
Commerce Code does not apply to stolen property. See Four B’s Inc. v. State, 902 S.W.2d
683 (Tex. App.—Austin 1995, writ denied). This case does not help them in this situation. 
The decision in Four B’s Inc. came as a result of the appeal of a hearing pursuant to Chapter
47 of the Code of Criminal Procedure. A hearing under Chapter 47 was neither requested nor
held in this case. Thus, we find Four B’s Inc. inapplicable to this situation.
      Tipton and Federated also rely on MBank Waco v. L. & J. Inc. for the proposition that the
true owner of property is entitled to recover stolen property even from a good faith purchaser. 
See MBank Waco v. L. & J. Inc., 754 S.W.2d 245, 251 (Tex. App.—Waco 1988, writ
denied). However, that was the rule under the pre-Code common law, that is, unless equity
estopped the true owner from asserting their title. Id. Thus, Mbank Waco is also inapplicable
to Tipton’s and Federated’s position.
      The evidence establishes that the Owners were good faith purchasers for value of the
tractors. Although Plunkett produced checks to Tipton that were ultimately dishonored, he
could transfer good title, albeit down the line, to the Owners and the Bank. Thus, the trial
court did not err in granting the Owners’s partial summary judgment regarding ownership of
the four tractors. Tipton’s and Federated’s second issue is overruled.
Attorney’s Fees
      In their third issue, Tipton and Federated contend the trial court improperly awarded
attorney’s fees to the Owners. Specifically, they argue the Owners failed to segregate the fees
as to the different claims and different defendants. Tipton and Federated did not object at the
hearing to the Owners’s alleged failure to segregate the attorney’s fees. They did, however,
raise this complaint in their motion for new trial.
      There is some question about whether Tipton’s and Federated’s motion for new trial
preserved their complaint about the failure to segregate attorney’s fees for our review. See
Southern Concrete Co. v. Metrotec Financial, Inc., 775 S.W.2d 446, 750 (Tex. App.—Dallas
1989, no writ)(where, in a bench trial, court awards fees based on evidence of services that
should have been segregated, the opposing party must object by postjudgment motion). Contra
Green Int’l v. Solis, 951 S.W.2d 384, 389 (Tex. 1997)(“...if no one objects to the fact that the
attorney’s fees are not segregated as to specific claims, then the objection is waived.”); Hoxie
Implement Co. v. Baker, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet.
denied)(including an objection and grounds in a motion for new trial does not satisfy the
contemporaneous objection rule if the complaint could have been urged earlier). See also
Dudley v. Travis County Sheriff, No. 03-99-00557-CV, 2000 Tex. App. LEXIS 2554, *7, n. 3
(Tex. App.—Austin April 20, 2000)(not designated for publication).
      In any event, the Owners’s claims were so intertwined that segregation was not necessary. 
Stewart Title Guaranty Corp. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991). Tipton’s and
Federated’s third issue is overruled.
Voided Seizure Warrants
      On March 8, 2002, the trial court signed a document which made findings on Tipton’s and
Federated’s plea in abatement, granted three of the Owners’s and the Bank’s motion for partial
summary judgment, and ordered the Department of Public Safety, the Heart of Texas Auto
Task Force, and Sherry Anderson to return the tractors seized by the warrant issued on
November 26, 2001. It is this last order about which Federated and Tipton complain in their
fourth issue on appeal. They contend that the trial court erred in making that order because it
had no power to void the seizure orders issued by the 19th Judicial District Court of McLennan
County. After a hearing on attorney’s fees, the trial court signed a final judgment on July 11,
2002. No mention of the return of the tractors was made in the final judgment.
      In their argument on appeal, it is difficult to understand what Tipton and Federated are
complaining about. At first, they contend that the Texas Constitution and the Texas
Government Code prohibited the trial court from entering its “injunctive order” which voided
the warrants issued by the 19th District Court. Possibly, it would have had the effect of
voiding the warrants, but the order itself did not expressly “void” those warrants. It simply
ordered the return of the property within seven days. By the next page of their brief, Tipton
and Federated revert back to their argument that the trial court had no jurisdiction to enter the
order and determine ownership of the tractors because Chapter 47 of the Texas Code of
Criminal Procedure applied to the proceeding and vested exclusive jurisdiction in the
McLennan County courts. This appears to be the true complaint raised by this issue. We have
already held that Chapter 47 does not provide exclusive jurisdiction for the determination of
the ownership of the tractors. The argument here has no merit. Thus, Tipton’s and
Federated’s fourth issue is overruled.
Conclusion
      Having overruled each of Tipton’s and Federated’s issues on appeal, the trial court’s
judgment is affirmed.
 

                                                                   TOM GRAY
                                                                   Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



Affirmed
Opinion delivered and filed June 30, 2004
[CV06]