**Lloyd NELMS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–88–002–CV.**

Court of Appeals of Texas,
Fort Worth.

Dec. 8, 1988.

Bruce A. Martin, Law Office of Bruce A. Martin, Wichita Falls, for appellant.

Dan B. Grissom, Granbury, for state.

Before BURDOCK, HILL and FARRIS, JJ.

OPINION

FARRIS, Justice.

Nelms appeals a court order, entered after his trial for theft of property, which

ordered the return of cash and checks to parties other than Nelms. *See* TEX.CODE CRIM.PROC.ANN. art. 47.02 (Vernon 1979). Nelms' point of error complains that the trial court erred in determining that the owners of the cash were someone other than Nelms. We affirm the order of the trial court.

Nelms was indicted on a charge of theft of property valued over $750 and less than $20,000, and was convicted of a lesser included offense of theft as a Class A misdemeanor. This court has previously reversed Nelms' conviction, ordering his acquittal in an unpublished opinion of the court.

Nelms' offense involved the alleged theft of entry fees collected by Nelms in connection with a bass fishing tournament which he was conducting. After his acquittal, the trial court conducted a hearing to determine the ownership of checks and $3,385 in cash found in Nelms' possession when he was arrested. The trial court ordered that each check be returned to the person using it to pay his entry fee and the cash divided among those entrants who paid their entry fees in cash. Nelms does not appeal the court order returning the checks, but contends that the evidence establishes that he is the owner of the $3,385 in cash. We affirm the order of the trial court because we find the evidence is legally and factually sufficient to support the trial court's determination of ownership of the cash.

 Although Nelms' trial conviction and subsequent acquittal, in this case, were criminal proceedings, the determination of ownership of the cash is a civil matter. *See Williams v. State*, 562 S.W.2d 889, 890 (Tex.Civ.App.—El Paso 1978, writ dism'd). No findings of fact or conclusions of law were requested or filed and the order of the trial court implies all necessary findings of fact in support thereof. *See In Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam).

 Nelms was the only witness at the hearing on ownership who testified about the ownership of the cash. Nelms claims that he had arrived in Granbury, Texas, with $6,200 in cash which he intended to use as prize money in a bass fishing tournament which he was conducting. He admitted collecting $4,000 in cash entry fees, but contended that he was robbed of the $4,000 cash, and a part of the $6,200. The remaining $3,385 was found hidden in his pickup truck. Nelms' explanation was that he had divided his $6,200, taking part of that sum and adding it to the $4,000 in entry fees to be used to pay $7,000 in cash prizes to the tournament winners. Nelms was cross-examined about his reasons for hiding some of the money in his motel room, where he alleged he was robbed, and hiding the remaining sum in his truck. Nelms was also cross-examined about his failure to offer proof supporting his testimony that he withdrew the $6,200 from a bank.

In addition to Nelms' testimony, the trial court took judicial notice of the entire content of the case file presumably including the statement of facts from Nelms' trial of the criminal charges. We find the evidence deduced at Nelms' trial is sufficient to sustain the trial court's determination of ownership.

At the time in question, Nelms was the president of North Texas Sportsman Association (N.T.S.A.). That organization was in the business of conducting bass tournaments in Texas. N.T.S.A. would collect an entry fee from each fisherman and then pay cash and other prizes to the winners.

In October, 1985, N.T.S.A., through Nelms, scheduled a tournament at Lake Granbury. The tournament was publicized by direct-mailing of brochures. According to the brochures, the tournament was to last all day Saturday and half a day on Sunday. The entry fee for the tournament was $60 per fisherman. N.T.S.A. guaranteed first, second and third place prizes, totalling $7,000 in cash and other prizes. The fourth through twentieth ranked contestants also were to receive cash prizes, if at least 250 anglers registered for the tournament. Cash prizes were determined by a weigh-in of three fish caught by contestants each day. Weigh-ins were scheduled for Saturday afternoon from 2:00 to 3:00 and Sunday from 12:00 to 1:00. The com-

bined weight of the stringers determined the winners.

At first, the bass tournament proceeded as planned. Fishermen checked in on Friday and Saturday at a local boat ramp, which served as the N.T.S.A. headquarters. N.T.S.A. fishing caps, as promised by the brochure, were distributed. The Saturday weigh-in was held and the fishermen returned for the second day of fishing on Sunday. Nelms was to disburse all of the prizes at the final weigh-in on Sunday. However, shortly before weigh-in time, Granbury police were dispatched to the Best Western Classic Inn, where Nelms was staying during the tournament. They found Nelms in his room, seated on the floor with his hands taped together in front of him. His hands were taped together with "Johnson & Johnson" white medical tape. His hands were taped approximately 8″ apart and the officers testified that Nelms could both use the telephone and open doors regardless of the tape. When officers entered the room, Nelms was biting at the tape, apparently attempting to free himself.

Nelms told the officers that two men had knocked at his door early in the morning and inquired about changing the tournament rules. Nelms told the officers that one of the men pushed him and struck him on the back of the head. Nelms claimed not to remember anything after being hit. However, he did tell the officers that the two men stole his billfold, credit cards, and the prize money from the tournament. He told the officers there was over $7,000 in prize money which he kept in a silver bankbag underneath his pillow.

The officers called an ambulance and checked the back of Nelms' head. A small red mark was found, but no large lumps or cuts were visible. Nelms complained that he was dizzy and he had been vomiting since he had regained consciousness. One of the officers checked the motel room and found no signs of vomiting.

When the ambulance crew arrived, they took Nelms out of the motel room and placed him in the ambulance. However, Nelms returned to the motel room, stating,

"I need my billfold." He then opened the drawer to a dresser and took out a billfold, placing it in the waistband of his pants. The officers became suspicious of Nelms because of his prior statement that his billfold had been stolen. As a result, the officers searched the motel room. They found a N.T.S.A. savings book under Nelms' mattress, and eight checks which were protruding from an open briefcase. The checks were apparently for entry fees to the tournament. The name of the payee was not filled out on a number of the checks. Additionally, the officers found a number of credit cards in the briefcase.

The officers further searched the room and found a tape dispenser underneath one of the beds. The inner spool of the tape dispenser was found underneath another bed in the room. While one officer searched underneath the beds, the other officer found Nelms' personal checkbook. The room appeared very neat and there were no signs of struggle.

Nelms was taken to the hospital and examined. He left the hospital against the advice of hospital authorities and attending physicians. As he left the hospital, he was arrested by Granbury police officers. The Granbury Police Department obtained a search warrant and searched Nelms' pickup truck. The search produced three empty silver bankbags behind the seat of the truck. Also, officers found a silver bankbag hidden underneath the dash of the truck. That bankbag contained $3,385 in cash.

In our previous unpublished opinion reversing Nelms' conviction because of insufficient evidence to support the finding of guilty, we noted there was no doubt that the evidence presented established a likelihood that Nelms staged a robbery in an attempt to avoid paying prizes, holding however, that the evidence was not sufficient to show that Nelms intended to deprive the fishermen of their entry fees when he received the fees from them which was essential to sustaining Nelms' conviction. We find the evidence set out above is sufficient to sustain the trial court's find-

ing of ownership. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

The order of the trial court is affirmed.