Four B's v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00255-CV







Four B's Inc. d/b/a Action Pawn #1, Appellant



v.



State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 43,046, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING







PER CURIAM



 Following Deyarl Matheny's conviction of theft by check, the State moved to
restore one of the stolen items, a Mossberg .12 gauge shotgun, to its owner, L. M. Kaster. Tex.
Code Crim. Proc. Ann. art. 47.02 (West 1979). Appellant Four B's Inc. d/b/a/ Action Pawn #1
intervened in the proceeding and asserted its right to the gun as a good faith purchaser from
Matheny. The trial court ordered the gun restored to Kaster, from which order Four B's appeals. 
We will affirm the trial court's judgment.



JURISDICTION


 Article 47.02 of the Code of Criminal Procedure provides that after a trial for the
illegal acquisition of property, "the court trying the case shall order the property restored to the
person appearing by the proof to be the owner." (West 1979). The State initially contends that
this Court lacks jurisdiction of the appeal. The State argues that a proceeding to restore property
is a criminal proceeding that is legislatively created and that the legislature has not provided for
an appeal. See generally Tex. Code Crim. Proc. Ann. ch. 47 (West 1979 & Supp. 1995). 

 The Code of Criminal Procedure provides in two different articles for proceedings
to restore property, one for proceedings that occur before the related criminal trial and another
for proceedings during or after the criminal trial. Tex. Code Crim. Proc. Ann. arts. 47.01a,
47.02 (West 1979 & Supp. 1995). The State points out that in 1993 the legislature amended
chapter forty-seven to authorize an appeal from a property disposition made before the related
criminal trial is held. Tex. Code Crim. Proc. Ann. art. 47.12 (West Supp. 1995). (1) The
amendment implies that no previous right to appeal a property disposition existed under chapter
forty-seven and that, by allowing an appeal only from proceedings that occur before the criminal
trial, an appeal is prohibited from proceedings that occur during or after trial. The State
emphasizes that the right to appeal in a criminal case is conferred by statute. Savage v. State, 237
S.W.2d 315, 317 (Tex. Crim. App. 1950). See Morris v. State, 749 S.W.2d 772, 774 (Tex.
Crim. App. 1986).

 In characterizing a proceeding to restore property as a criminal proceeding, the
State relies on the court of criminal appeals' opinion in State ex rel. Holmes v. Court of Appeals
for the Third District, 885 S.W.2d 389 (Tex. Crim. App. 1994). The State views Holmes as
culminating a line of cases that expansively define a "criminal law matter." E.g., Curry v.
Wilson, 853 S.W.2d 40 (Tex. Crim. App. 1993); Smith v. Flack, 728 S.W.2d 784 (Tex. Crim.
App. 1987); Weiner v. Dial, 653 S.W.2d 786 (Tex. Crim. App. 1983). We disagree that Holmes
is decisive. In Holmes, the court of criminal appeals examined whether its mandamus power
extended to a court of appeals' order enjoining an execution. Holmes, 885 S.W.2d at 392. 
Because the court of criminal appeals' mandamus power is limited to "criminal law matters," the
court first determined whether the court of appeals' injunction was a criminal law matter. Id. at
393.

 The constitution distinguishes between "criminal law matters" and "criminal cases,"
granting the court of criminal appeals final appellate jurisdiction in the latter while granting it
mandamus jurisdiction in the former. Const. art. V, § 5. See also Tex. Code Crim. Proc. Ann.
art. 4.04 (West Supp. 1995). Because our case does not concern the mandamus power of the
court of criminal appeals, the definition of a "criminal law matter" is not helpful. 

 We therefore do not read Holmes as invalidating earlier opinions in which courts
have held a proceeding to restore property to be a civil case. See Bretz v. State, 508 S.W.2d 97,
97-98 (Tex. Crim. App. 1974); Nelms v. State, 761 S.W.2d 578, 579 (Tex. App.--Fort Worth
1988, no writ); Williams v. State, 562 S.W.2d 889, 890 (Tex. Civ. App.--El Paso 1978, writ
dism'd). In Williams, for instance, the court determined that it lacked jurisdiction over an appeal
from a proceeding to restore property because the requirement for a civil appeal, that over one
hundred dollars be in controversy, was not met. Williams, 562 S.W.2d at 890. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.012 (West 1986); Tex. Gov't Code Ann. § 22.220 (West 1988). 
We adhere to the holdings in Bretz, Nelms, and Williams that a proceeding to restore property is
a civil case.

 We also note that proceedings to restore property are similar to forfeiture
proceedings in that both concern the disposition of various types of contraband. See Tex. Code
Crim. Proc. Ann. ch. 59 (West Supp. 1995). Forfeiture proceedings have uniformly been
considered civil cases. E.g., State v. Rumfolo, 545 S.W.2d 752, 754 (Tex. 1976); $22,922.00
v. State, 853 S.W.2d 99, 101 (Tex. App.--Houston [14th Dist.] 1993, writ denied); Dancy v.
Cave, 760 S.W.2d 40, 44 (Tex. App.--Amarillo 1988, no writ). 

 The courts of appeals have appellate jurisdiction of civil cases in which the amount
in controversy exceeds one hundred dollars. Tex. Gov't Code Ann. § 22.220 (West 1988); Tex.
Civ. Prac. & Rem. Code § 51.012 (West 1986). Because the proceeding here is a civil case over
which this Court has appellate jurisdiction, we overrule the State's cross-point of error.



DISCUSSION


 In its first and second points of error, Four B's argues that the trial court erred in
concluding that section 2.403 of the Business and Commerce Code does not apply to
determinations of ownership under article 47.02. See Tex. Bus. & Com. Code Ann. § 2.403
(West 1994). The trial court specifically concluded that subsection (a)(2) of section 2.403 did not
apply to the disposition of stolen property. Subsection (a)(2) confers on a purchaser who takes
delivery of goods in a sales transaction the power to transfer a good title even though the delivery
was in exchange for a check that is later dishonored. Tex. Bus. & Com. Code Ann. § 2.403
(West 1994).

 Four B's reasons that under the Business and Commerce Code, Matheny had the
power to pass a good title to a good faith purchaser for value. If Four B's qualified as such a
good faith purchaser, it acquired a title in the gun superior to Kaster's and was entitled to be
awarded the gun.

 The language of article 47.02 shows no intent to adopt the standards of the Business
and Commerce Code, stating only that the court shall order the property restored to the person
"appearing by the proof" to be the owner of the property. Generally, a pawnbroker acquires no
right against the true owner to retain possession of an article pawned without the knowledge,
consent, or authority of the owner. 47 C.J.S. Interest and Usury; Consumer Credit § 358 (1982). 
If a pawnbroker, who is not required by a police officer or court to hold property for trial,
withholds property from a person who presents valid proof of ownership and demands the return
of the property, the pawnbroker is liable for conversion. Reiner v. Marceau, 338 S.W.2d 285,
288 (Tex. Civ. App.--Houston [1st Dist.] 1960, no writ). The court also held in Reiner that the
pawnbroker's good faith in receiving the goods was immaterial to the owner's claim for actual
damages. 338 S.W.2d at 289.

 Certain provisions of the Texas Pawnshop Act shed further light on the question
of whether Four B's is entitled to acquire a good title in the pawned gun. See Tex. Rev. Civ.
Stat. Ann. arts. 5069-51.01--.17 (West 1987 & Supp. 1995) ("Act"). The Act declares it the
policy of this state to exercise its police power to ensure a sound system of pawn loans and to
prevent unlawful property transactions, particularly in stolen property. Act, art. 5069-51.01A
(West 1987). The Act prohibits pawnbrokers from buying used property unless a record is kept
that identifies the seller, describes the property, and includes the seller's signed statement that he
has the right to sell the property. Act, art. 5069-51.16(9) (West Supp. 1995). The Act authorizes
penalties for violating any provision therein. Act, art. 5069-51.17 (West 1987 & Supp. 1995).

 A pawnbroker must monitor the goods it acquires to identify and prohibit
transactions involving stolen goods. Act, art. 51.17B(j) (West Supp. 1995). Further, the
Consumer Credit Commissioner must adopt rules that permit a consumer who has filed an offense
report with a local law enforcement agency to ask a pawnbroker to search the shop's records and
that permit the pawnbroker to help the consumer and law enforcement agency locate and recover
stolen property. Act, art. 5069-51.17B(q) (West Supp. 1995).

 Rather than legitimizing a pawnshop's good faith purchase of stolen property, the
provisions of the Pawnbroker Act show an intent that pawnbrokers not receive and assert title to
stolen property. The inability of a pawnbroker to prevail against a property owner suing for
conversion and the policy advanced by the Pawnbroker Act establish that pawnshops do not take
a good title to stolen property. Because the trial court correctly denied Four B's the protection
of the Business and Commerce Code, we overrule points one and two.

 In point of error three, Four B's asserts that the trial court erroneously concluded
that it was not a good faith purchaser for value. In point four, Four B's contends that the trial
court erroneously determined that the property belonged to Kaster. Because Four Bs' argument
under both points assumes that the Business and Commerce Code applies, we overrule points three
and four.

 We affirm the judgment of the trial court.


Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: June 21, 1995

Publish
1. [1]  The 1993 amendment applies only to property that comes into police custody on or after
August 30, 1993. Act of May 22, 1993, 73d Leg., R.S., ch. 860, § 3, 1993 Tex. Gen. Laws,
3372, 3373; Tex. Code Crim. Proc. Ann. art. 47.12 cmt. (West Supp. 1995). It would not apply
to the Mossberg shotgun here, which came into police custody before that date.