**Opinion issued November 6, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-12-01142-CV**
**NO. 01-12-01143-CV**

_____

**JOHN B. KENNEDY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1320351 & 1237940**

---

## O P I N I ON

After pleading guilty, John B. Kennedy was convicted of two felony

offenses: (1) falsely holding oneself out as a lawyer[1] and (2) money laundering.[2]

---

[1]    *See* TEX. PENAL CODE ANN. § 38.122(a) (Vernon 2011).

[2]    *See id.* § 34.02(a)(1), (e)(4) (Vernon 2011).

The trial court sentenced Kennedy to concurrent terms of 10 years in prison. Thereafter, in each case, Kennedy filed a motion for the restoration of property pursuant to Chapter 47 of the Code of Criminal Procedure.[3] Kennedy asserted "rightful ownership" to money being held as evidence by the State. The State claimed that the money was stolen property, unlawfully acquired by Kennedy in committing his crimes. Following an evidentiary hearing, the trial court ruled against Kennedy, rejecting his request to obtain the currency.

Kennedy appeals the order in each case. Raising two identical issues in each appeal, he asserts that no evidence supports the trial court's order.

We affirm.

## Background

On April 3 2009, John B. Kennedy was arrested in Harris County, Texas, at his place of business, a law office, on an outstanding warrant for falsely holding himself out as a lawyer. Outside, the signs were displayed advertising attorney services. Parked in front of the office was a van. The van was covered in a banner advertising legal services. The license plates on the van were registered to Kennedy. Inside the office, signs were displayed on the walls indicating that legal

---

[3] *See* TEX. CODE CRIM. PROC. ANN. arts. 47.01–12 (Vernon 2006 & Supp. 2014).

2

services were provided there. Kennedy was identified on the commercial lease as the person who rented the office space.

Kennedy was charged by indictment with the offense of falsely holding himself out as a lawyer on October 21, 2009. Kennedy was released on bond. At some point, Kennedy left Texas and went to Delaware. On August 11, 2011, the Harris County District Attorney's contacted the City of Wilmington's police department in Delaware to request assistance in apprehending Kennedy. Kennedy was believed to be in the Wilmington area and was considered to be a fugitive. Sergeant D. Rosenblum of the Wilmington police department received the call for assistance. Officer Rosenblum dispatched a number of officers, who soon located Kennedy's vehicle at a local motel.

Rosenblum went to the motel, where he found Kennedy. After obtaining Kennedy's consent, Rosenblum searched the vehicle. Inside, Rosenblum found several identification cards, license plates, and a black attaché case. The case contained numerous papers, documents, notebooks, and approximately $12,000 in cash. Officer Rosenblum also found a receipt with a "code card" to a local storage facility. After contacting the storage facility, Officer Rosenblum learned that Kennedy had rented a storage unit on August 10, 2011 and had paid rent on the unit through September 9, 2011.

Officer Rosenblum obtained a search warrant, signed by a Delaware judge, to search the storage unit rented by Kennedy. Inside the storage unit, Officer Rosenblum found numerous trash bags stuffed with thousands of white envelopes containing cash, comprised of small denomination bills. A ledger was also found, containing dates and a handwritten list of names. To the right of each name was a corresponding amount of money.

In another trash bag, Officer Rosenblum recovered a number of documents entitled "Attorney at Law, Divorce Interview Sheet." These were form documents, which had been filled in by hand. For example, in the space for "client," names had been written in and contact information had been provided. Money order receipts were also attached to the forms.

In addition, Officer Rosenblum recovered two guns and other personal items from the storage unit. A hand-written "to-do" list was also recovered. On the list, were items such as "steal 2 TX license tags" and "sell van."

After the search, the Wilmington police counted the cash found in the trash bags and determined it to total $851,651. The money was deposited in a bank and then transferred to the Harris County District Attorney's Office. There, it was held in a bank account where it accumulated interest. The IRS demanded a portion of the money for payment of delinquent taxes owed by Kennedy. Once the IRS was paid, a balance of $702,792.99 remained.

4

R. Montoya, a fraud examiner with Harris County District Attorney's Office, analyzed the ledger that had been seized from the storage unit. He created two spreadsheets, sorting the handwritten entries chronologically and alphabetically. He determined that the time period covered in the ledger was from July 1, 2009 through July 15, 2011. Montoya also determined that the total for the monetary entries reflected in the ledger was $778,663.58.

In addition to the 2009 indictment, charging Kennedy with the offense of falsely holding oneself out as an attorney, Kennedy was charged with the offense of money laundering on October 27, 2011. With respect to the first offense, the 2009 indictment read as follows: "John B. Kennedy . . . did . . . on or about September 25, 2007 . . . unlawfully, with intent to obtain an economic benefit for himself, falsely hold himself out as a lawyer to Sarah E. Lee."

The October 27, 2011 indictment for money laundering charged as follows:

> John B. Kennedy . . . did . . . on or about April 5, 2011, . . . unlawfully, pursuant to a single scheme and continuing course of conduct, knowingly acquire and maintain an interest in funds of the value of at least two hundred thousand dollars, which constituted the proceeds of criminal activity, namely, by falsely holding out as an attorney.

On March 29, 2012, Kennedy pleaded guilty to the offenses of falsely holding oneself out as an attorney and money laundering, as charged in the 2009 and 2011 indictments. Pursuant to the State's punishment recommendation, the trial court sentenced Kennedy to concurrent 10-year sentences in prison. The trial

5

court signed the judgments of conviction. That same day, Kennedy filed his "Motion to Restore Property and Claim of Ownership by Interested Party and Request for Hearing Pursuant to Article 47 of the Code of Criminal Procedure," under both cause numbers.

In the motion, Kennedy claimed as follows:

1. The state of Texas is holding items of property including money pursuant to Article 47 of the Code of Criminal Procedure which was evidence in and in part alleged to be contraband.

2. The defendant has pled guilty to the above described causes and claims to the property are to be decided by the Court sitting as a Magistrate pursuant to Article 47 of the Code of Criminal Procedure.

3. The code provides that any interested person may make claim that the property at issue was not acquired by theft or other unlawful means and make claims. Defendant hereby makes claim that money and property or a portion of money and property which is being held as evidence and for disposition by the State of Texas was not acquired by unlawful means and makes a claim of rightful ownership of the property.

On May 8, 2012, a hearing was held on Kennedy's motion for the restoration of stolen property. The trial court admitted into evidence Kennedy's judgments of conviction for the offenses of falsely holding oneself out as an attorney and money laundering.

The State presented the testimony of the assistant district attorney who is the custodian of the funds obtained from the Delaware storage unit. She testified that,

6

after payment was made to the IRS, a balance of $702,792.99 remained in the bank account.

In testifying for the State, Officer Rosenblum described the items recovered from Kennedy's vehicle and from the storage unit, including the $851,651.00 in cash found stuffed in the garbage bags, the ledger, and the client interview sheets. Through him, the ledger and other documents recovered from the storage locker were introduced into evidence.

In addition, fraud examiner R. Montoya testified for the State. The State introduced into evidence the spreadsheets Montoya had prepared from his analysis of the ledger. Montoya testified that the ledger contained monetary entries totaling $778,663.58, covering the period of July 1, 2009 through July 15, 2011.

Also, the State offered the testimony of C. Johnson, an investigator for the district attorney's office. Johnson stated that, in 2009, he had gone to Kennedy's place of business located at 1585 South Highway 6 in Harris County, Texas. He acknowledged that Kennedy had not held himself out to be an attorney that day when an undercover officer had approached Kennedy. Johnson stated that Kennedy was, however, arrested that day on an outstanding warrant for holding himself out to be a lawyer.

Johnson testified that the office had signs advertising legal services. He stated that a van parked in front of the office also had a large banner advertising

7

legal services.  A photograph of the van introduced into evidence showed the banner, which said, "We beat everybody's price!  Divorce Cheap Quick!"  Johnson testified that the license plates on the van were registered to Kennedy.  Inside the office, Johnson observed signs displayed on the walls indicating that legal services were provided there.  A photograph of Kennedy standing in the office in front of the signs was admitted into evidence.

To support his motion to restore property, Kennedy offered his own testimony.  He claimed that he had not held himself out as an attorney while working at the Harris County law office.  In his testimony, Kennedy indicated that he had worked at that location from 2005 to 2011 as a secretary assisting an attorney.  He stated that he would answer the telephone, set up appointments, and fill out client interview sheets.  Kennedy testified that he was paid a salary of less than $25 per week at the law office.

Kennedy claimed that the $851,651.00 in cash found stuffed into garbage bags in the storage locker was not related to the monetary amounts, totaling $778,663.58, recorded in the ledger.  Kennedy asserted that the cash found inside the garbage bags was his life savings and represented money that he had earned working since he was 12 years old.  He stated that he had earned all of the money before moving to Texas in 2004.

Kennedy asserted that he had been storing the cash with a person named "Frank Madison" in Washington, D.C. Kennedy testified that he had retrieved the money from Madison before going to Delaware for medical treatment. Kennedy stated that Madison lived somewhere around the "7800 block of Washington, D.C."

Kennedy claimed that the $778,663.58 reflected in the ledger found in the storage unit was money earned by the law firm for which he had worked as a secretary. He stated that he had not received the money; rather, it had gone to the attorney for whom he worked to pay for office rent and other business expenses. On cross-examination, Kennedy admitted that his name was on the commercial lease for the law office. The lease for the law office was admitted into evidence.

In its closing arguments, the State asserted that Kennedy was not entitled to the funds held by the district attorney's office because the evidence was sufficient to show that Kennedy had obtained the funds illegally by falsely holding himself out as a lawyer. In contrast, Kennedy asserted that the evidence had not sufficiently connected the funds recovered in the storage unit to the offenses for which he was convicted. He maintained that he was entitled to have the funds restored to him because he had acquired them through legitimate means.

On August 10, 2012, the trial court signed its "Order on Motion for Disposition of Stolen Property" in both trial court cause numbers. The court

rejected Kennedy's request to restore the funds to him and made a number of

factual findings in the order.  In the decretal portion of its order, the court ruled as

follows:

> ORDERED that the rest and remainder of the APPROXIMATELY $702,792.99 in United States currency, including all accrued interest thereon, if any, be awarded to the Harris County District Attorney's Office, the party with superior right to possession of the property, as set forth in the Texas Code of Criminal Procedure, for their official purposes, all to be administered and disposed of in compliance with Article 47.02 of the Texas Code of Criminal Procedure.

Kennedy now appeals the order in each case.  He presents two issues in

which he asserts that no evidence supports the trial court's order.

## Chapter 47

Kennedy initiated the underlying proceeding pursuant to Chapter 47 of the

Code of Criminal Procedure. [4]  Chapter 47 provides a procedure by which a person

---

[4]  Although he was adamant in the trial court that Chapter 47—not the forfeiture statutes—applied to the underlying proceedings, Kennedy now cites civil forfeiture law to support his challenge to the trial court's order.  We note that similarities exist between Chapter 47 and the civil forfeiture statutes; however, there are also significant differences.  The forfeiture statutes apply to contraband—property used in the commission of crime or proceeds gained by the commission of a crime—that has been seized by law enforcement.  *See* TEX. CODE CRIM. PROC. ANN. arts. 59.01–.14 (Vernon 2006 & Supp. 2014).  The civil forfeiture statutes are remedial in nature.  *See Fant v.*

claiming an interest in stolen property, which is in the custody of a governmental authority, may seek to obtain possession of the property. *See* TEX. CODE CRIM. PROC. ANN. arts. 47.01–.12 (Vernon 2006 & Supp. 2014); *see also York v. State*, 373 S.W.3d 32, 43 (Tex. 2012) (stating that Chapter 47 authorizes a court to make determination of possession of property); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex. 2011) (explaining that party claiming lien interest in stolen property seized by government authority can assert its interest by filling a Chapter 47 proceeding).

A question has arisen in the instant appeals regarding which provision of Chapter 47 applies to the proceeding initiated by Kennedy in his motion to recover property. Kennedy asserts that the proceeding was governed by Article 47.01a. The State asserts that Article 47.02 applies. We agree with the State that Article 47.02 governs here.

Article 47.01a, the provision relied on by Kennedy, applies only to Chapter 47 proceedings occurring when a criminal action relating to the allegedly stolen property *is not pending*. CRIM. PROC. art. 47.01a (Vernon 2006). In other words,

---

*State*, 931 S.W.2d 299, 306 (Tex. Crim. App. 1996). The statutes encourage property owners to safeguard their property so it is not used for illegal purposes; this ensures that persons do not profit from their illegal acts. *See id.* at 308. In contrast, Chapter 47 serves to provide a procedure by which someone claiming a right of possession in stolen property may seek to recover it from law enforcement officials by showing a legitimate interest in the property. *See* TEX. CODE CRIM. PROC. ANN. arts. 47.01–.12.

11

Article 47.01a applies when no indictment or information has been filed initiating a criminal action. *See Perry v. Breland*, 16 S.W.3d 182, 189 (Tex. App.—Eastland 2000, pet. denied) (holding that Article 47.01a applies only to Chapter 47 proceedings occurring before filing of indictment or information); *see also VSC*, 347 S.W.3d at 235 (discussing utilization of Article 47.01a procedure to remedy party's claim to interest in motor vehicles seized by government; facts there show no criminal action pending).

In contrast, if a criminal action is pending, jurisdiction to dispose of the property lies with the trial court under article 47.02. *See* CRIM. PROC. art. 47.02; *Perry*, 16 S.W.3d at 189. Article 47.02(a)'s express language allows the trial court to restore stolen property to its owner during or after a criminal trial. CRIM. PROC. art. 47.02(a); *see, e.g., Nelms v. State*, 761 S.W.2d 578, 579–80 (Tex. App.—Fort Worth 1988, no writ) (involving appeal by criminal defendant from trial court's order restoring stolen funds to their owners, pursuant to Article 47.02, after defendant's criminal trial). Specifically, Article 47.02(a) provides, "On the trial of any criminal action for theft or any other offense involving the illegal acquisition of property, the court trying the case shall order the property to be restored to the person appearing by the proof to be the owner of the property." CODE CRIM. PROC. art. 47.02(a). Here, the circumstances fit under the rubric of Article 47.02(a).

12

Kennedy filed his motion to restore property the same day that he pleaded guilty to offenses of falsely holding himself out as an attorney and money laundering. The trial court signed the judgments of conviction that day. The Court of Criminal Appeals has made clear that a plea proceeding is considered a trial under Texas law. *Murray v. State*, 302 S.W.3d 874, 880 (Tex. Crim. App. 2009).

In addition, the trial involved "the illegal acquisition of property." *See* CRIM. PROC. art. 47.02(a). The record reflects that Kennedy pleaded guilty to charges of falsely holding himself out as a lawyer and money laundering in an amount of at least $200,000, which constituted the proceeds of falsely holding himself out as a lawyer. Article 47.11 provides that Chapter 47 extends to property acquired in any manner which makes the acquisition a penal offense. CRIM. PROC. art. 47.11. Thus, we conclude that Article 47.02 governed the Chapter 47

proceeding to restore property initiated by Kennedy in these cases.[5]  We now turn

to the merits of the appeals.[6]

## Sufficiency of the Evidence

On appeal, Kennedy raises two issues, asserting that there was "no

evidence," that is, legally insufficient evidence, to support the trial court's order

disposing of the currency.

## A.    Standard of Review

When the appellate record includes the reporter's record, the trial court's

factual findings, whether express or implied, may be challenged for legal and

factual sufficiency.  *See McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex.

App.—Houston [1st Dist.] 2014, no pet.).  We review the sufficiency of the

evidence supporting a trial court's challenged findings of fact by applying the same

---

[5]    Kennedy advocates for the application of criminal substantive law to the underlying proceeding.  However, a proceeding to restore property under Article 47.02 is considered a civil case because it concerns the disposition of property.  *See A. Benjamini, Inc. v. Dickson*, 2 S.W.3d 611, 612 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Four B's Inc. v. State*, 902 S.W.2d 683, 684 (Tex. App.—Austin 1995, writ denied); *cf. Bretz v. State*, 508 S.W.2d 97 (Tex. Crim. App. 1974) (dismissing appeal because Court of Criminal Appeals lacks jurisdiction over appeals from order disposing of property under 47.02, indicating that such proceeding was a civil matter over which it had no jurisdiction).

[6]    The State asserts that the appeals should be dismissed because Kennedy did not properly perfect his appeals from an Article 47.01a proceeding.  *See* CRIM. PROC. art. 47.12 (defining procedure for appeal following an  Article 47.01a hearing).  We need not reach this issue because we have determined that Article 47.02 applies here.

14

standards that we use in reviewing the sufficiency of the evidence supporting jury findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

When deciding a legal-sufficiency challenge, we view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.*

## B.    Analysis[7]

Pursuant to Article 47.02, "the court trying the case shall order the property to be restored *to the person appearing by proof to be the owner of the property*." CRIM. PROC. art. 47.02(a) (emphasis added). On appeal, Kennedy points to his own testimony, explaining the origin of the cash found in the storage unit. He indicates that his testimony establishes that he is the owner of the recovered

---

[7]    Much of Kennedy's argument in his brief incorrectly presumes that Article 47.01a governed the disposition of the funds. In addition, he cites law pertaining to civil forfeiture to support his position. As mentioned, there are distinctions between civil forfeiture proceedings and Chapter 47 proceedings. Nonetheless, to the extent possible and applicable, we construe Kennedy's legal-sufficiency challenges "reasonably, yet liberally" to review the merits of his appeals. *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible.").

15

currency and that he acquired it by legal means. In his brief, Kennedy summarizes his testimony on this point as follows:

> [Kennedy] explained that the money was his personal savings collected over fifty-seven years in the workforce, including twenty-four years of practicing law. Put simply, [Kennedy] explained that money in the storage unit was collected "before this alleged criminal event occurred."
>
> The cash seized by Delaware police never entered Texas, according to [Kennedy]. Instead, [Kennedy] had stored the money in Washington, D.C. with an acquaintance named Frank Madison while he worked there, then picked it up once he left Texas and then took the cash to Delaware with him. The reason that [Kennedy] stored the money in cash rather than in a checking account was due to problems he was experiencing with the IRS, which claimed [Kennedy] owed approximately $3 million in back taxes.

Kennedy also points to his testimony in which he explained that the monetary entries in the ledger, totaling $778,663.58, are unrelated to the cash found in the storage unit. According to Kennedy, the ledger entries represent money collected by the licensed attorney for whom he worked as a secretary. He claimed that the names listed in the ledger were the clients of the licensed attorney. Kennedy testified that he did not personally receive the monies reflected in the ledger; rather, those funds went directly to pay the law office's expenses, such as rent.

As the factfinder in the Chapter 47 proceeding, the trial court was the sole judge of Kennedy's credibility and was permitted to resolve any inconsistencies in the testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

16

Thus, it was the trial court's prerogative to disbelieve Kennedy's testimony regarding the origin of the cash recovered from the storage unit. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697.

In its order, the trial court found "that the approximately $702,792.99 in United States currency was acquired by theft or other criminal acts as that term is used Chapter 31 of the Texas Penal Code."[8] From this express finding, it may be implied that Kennedy was the person who had acquired the currency "by theft or other criminal acts." *See Smith v. McDaniel*, No. 12–12–00165–CV, 2013 WL 5302492, at *4 (Tex. App.—Tyler Sept. 18, 2013, no pet.) (mem. op.) (recognizing that, "if the findings are not as definite and specific as they should be, a reviewing court will consider not only the facts expressly found, but those that are implied from those expressly found"). As the thief of the recovered currency, Kennedy would not be a "person appearing by proof to be the owner of the property" under Article 47.02. *See* CRIM. PROC. art. 47.02(a). Accordingly, the trial court's express and implied findings support its rejection of Kennedy's request to recover the currency. *See Nelms*, 761 S.W.2d at 580 (holding that, despite the appellant's

---

[8]     A person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2014). Consent is not effective if induced by deception. *Id.* § 31.01(3) (Vernon Supp. 2014). "Deception" includes "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction . . . ." *Id.* § 31.01(1)(A). As mentioned, Kennedy pleaded guilty to the offense of falsely holding oneself out as an attorney.

17

acquittal of the related criminal offense, the evidence nonetheless showed that the appellant had "staged a robbery" related to the funds he sought to recover under Article 47.02; thus, the trial court's award of the funds to the original issuers of the funds was supported by the evidence).

On appeal, Kennedy asserts that the evidence was legally insufficient to establish a link between the offenses of which he was convicted—falsely holding oneself out as an attorney and money laundering—and the currency recovered from the storage unit. We disagree.

The State offered adequate evidence from which a factfinder could reasonably infer that the recovered cash was laundered funds unlawfully acquired by Kennedy by falsely holding himself out as a lawyer. The record reflects that, in 2009, Kennedy was arrested at his Harris County law office, where he admitted working, on a warrant for the offense of falsely holding himself out as a lawyer. Kennedy was the only person listed on the lease as renting the law office space. A van parked in front of the office displayed a large banner, which read, "We beat everybody's price! Divorce Cheap Quick!" The license plates on the van were registered to Kennedy.

The record further shows that Kennedy fled Texas, while out on bond, ending up in Delaware. The Delaware police arrested Kennedy in August 2011 as a fugitive. There, the police obtained a search warrant for his Delaware storage

18

unit. In the unit, the police recovered trash bags stuffed with over $800,000 in cash. Along with the cash, the police found numerous other documents and paperwork, a number of which appeared to correspond to the operation of a law practice. These included "Attorney at Law Divorce Interview Sheets," three of which were admitted into evidence. These indicated that client information and payment had been received from those persons.

Along with the cash in the storage locker, the police also recovered a ledger, listing hundreds of names and corresponding monetary entries. The monetary entries totaled $778,663.58. The entries covered the period of July 2009 through June 2011. Kennedy admitted that he worked at the Harris County law office from 2005 until 2011. Lastly, the records shows Kennedy pleaded guilty to falsely holding himself out as a lawyer and to laundering funds in an amount of at least $200,000. In so doing, he stipulated to, and confessed as true, the facts alleged in the corresponding indictments.

From the evidence, the trial court, as the factfinder, could have reasonably inferred that Kennedy unlawfully earned a minimum of $778,663.58 by falsely holding himself out as an attorney at his Harris County law office and then fled to Delaware with the currency.[9] We conclude that the evidence could have enabled a

---

[9] Kennedy also asserts that the evidence is insufficient because there is a difference in the total amount of money seized from the storage unit ($851,651.00) and the total

19

reasonable and fair-minded person to find that Kennedy acquired "approximately $702,792.99 in United States currency . . . by theft or other criminal acts," as found by the trial court.[10] *See City of Keller*, 168 S.W.3d at 827. We hold that the evidence was legally sufficient to support the trial court's order disposing of the property and implicitly refusing to award the currency to Kennedy. *See* CRIM. PROC. art. 47.02(a); *Nelms*, 761 S.W.2d 578, 579–80.

We overrule Kennedy's first and second issues in each appeal.

### Conclusion

We affirm the trial court's August 10, 2012 order in each appellate cause.

Laura Carter Higley
Justice

---

amount of money reflected in the ledger ($778,663.58). This difference is $72,987.42. As mentioned, the ledger entries cover the period of June 2009 to July 2011. By his own testimony, Kennedy worked at the Harris County law office from 2005 to 2011. Thus, the evidence supports an inference that Kennedy unlawfully acquired the additional $72,987.42 by falsely holding himself out as a lawyer in the period preceding the entries in the ledger. Moreover, in its order, the trial court found that $702,792.99 had been acquired by theft or other criminal acts. This amount is less than the total amount contained in the ledger. And, as mentioned, the balance of the $851,651.00 recovered from the storage unit was seized by the IRS for taxes owed by Kennedy.

[10] Because this finding supports the trial court's judgment, we need not address Kennedy's challenges to the other findings made by the trial court in its order. *See* TEX. R. APP. P. 47.1. We note that Kennedy has asserted that the State's evidence failed to meet some of the requirements of Article 47.01a; however, as discussed, that is not the governing provision in these cases.

Panel consists of Justices Higley, Bland, and Sharp.